*48 OPINION OF THE COURT
Graffeo, J.
In this appeal, we are asked to determine whether the term limits doctrine — which restricts the ability of municipal bodies to bind successors — renders unenforceable the Village of Endicott’s four-year professional services contract with petitioner for management of a Village-owned golf facility. Under the facts of this case, we conclude that the contract is valid and enforceable because the municipality entered into the agreement in its proprietary capacity.
In the 1920s, the Endicott Johnson Corporation built the EnJoie Golf Club and maintained it as a private facility. The Club has been owned and operated for profit by respondent Village of Endicott since 1964. Consisting of an 18-hole golf course, a pro shop and a restaurant, the Club each year hosts the B.C. Open, a PGA-tour event. The Village leases portions of the Club to third parties in exchange for rent.
The six-member Village Board of Trustees initially retained petitioner John L. Karedes as an independent contractor to manage the Club in 1996. The “Management Consulting Agreement,” dated March 29, 1996, required Karedes to handle personnel matters and oversee budget preparation and facility maintenance during the one-year term of the contract. Karedes received an annual salary plus additional compensation based on the volume of golf cart rentals. In 1997, the Board renewed its agreement with Karedes for a three-year term, with expiration in March 2000. In all other respects, the contract mirrored the original.
Respondent Michael E. Colella took office as Mayor of the Village on January 1, 2000, and shortly thereafter Karedes sought to initiate negotiations for renewal of his contract. The Board met on three occasions to discuss Karedes’s proposed terms and ultimately voted four-two to approve a four-year extension of his contract. Mayor Colella, who is permitted but not required to vote on Board matters except in the case of a tie (see Village Law § 4-400 [1] [a]), cast an additional vote opposing renewal. The new agreement significantly enhanced Karedes’s compensation by providing him with a percentage of the facility’s profits over a certain amount and additional annual increases. Colella announced his refusal to sign the agreement at a March 27 meeting of the Board, stating that he found the contract to be contrary to the best interests of the taxpayers and the Village.
*49 Over the next several months, Colella repeatedly declined to execute Karedes’s contract, despite demands from Karedes and the Board. This garnered public attention and apparently became the focus of the November 2000 Board elections.[1] The debate over the extension centered on the Club’s recent operating losses of over $1 million, which Karedes attributed to Board-approved improvement projects that resulted in lost revenue and increased expenses. Two members of the Board who voted in favor of continuing Karedes’s services were defeated at the polls.
Before the new Board members assumed office, Karedes commenced this CPLR article 78 proceeding and declaratory judgment action seeking to compel Colella to execute the contract and obtain judicial confirmation of the validity of the latest Management Consulting Agreement. The Village and Colella moved to dismiss the petition as time-barred or, in the alternative, as failing to state a cause of action because the agreement impermissibly bound the Board beyond the terms of the current Board members.
Supreme Court granted the motion to dismiss with respect to requested mandamus relief on the basis that the proceeding was commenced after expiration of the four-month statute of limitations for article 78 proceedings. The court, however, concluded that declaratory relief was sought in a timely fashion and the contract was valid and enforceable. The Village and Colella appealed, and Karedes cross-appealed from so much of the order as dismissed his petition for mandamus relief.
The Appellate Division affirmed Supreme Court’s dismissal of the mandamus petition as time-barred. The Court agreed that the declaratory judgment action was timely in light of the requested relief but modified Supreme Court’s order by declaring Karedes’s contract void and unenforceable. Reasoning that a municipality’s ability to contract for professional services is subject to the term limits doctrine absent legislation enabling the municipality to bind successors, the Court held that the Karedes contract was invalid as it curtailed the exercise of discretionary power by future boards.
Karedes asserts that the Village operates the Club in its proprietary capacity and that the Board could properly bind its successors to his four-year employment contract. We agree.
*50 The term limits rule prohibits one municipal body from contractually binding its successors in areas relating to governance unless specifically authorized by statute or charter provisions to do so (see Morin v Foster, 45 NY2d 287, 293 [1978]). Elected officials must be free to exercise legislative and governmental powers in accordance with their own discretion and ordinarily may not do so in a manner that limits the same discretionary right of their successors to exercise those powers. Classification of a particular municipal activity as governmental depends on several considerations, including whether the activity was historically performed by government, whether it is best executed by government and whether it is undertaken for profit or revenue (see 2A McQuillin, Municipal Corporations § 10.05, at 304 [3d rev ed]). In business or proprietary matters, by contrast, a municipality is not necessarily bound by this standard and may conduct itself as any other private business under similar circumstances (see Morin, 45 NY2d at 293; 10A McQuillin, supra, § 29.101, at 43-44). Proprietary functions are those “in which governmental activities essentially substitute for or supplement ‘traditionally private enterprises’ ” (Sebastian v State of New York, 93 NY2d 790, 793 [1999]).
This distinction has informed our review of municipal conduct in various contexts (see e.g. Morin, 45 NY2d 287 [county charter expressly empowered county legislature to bind successors by appointment of county manager for four-year term]; Sebastian, 93 NY2d 790 [State immunity from tort liability dependent on whether State acted in governmental or proprietary capacity]; New York Tel. Co. v City of Binghamton, 18 NY2d 152 [1966] [city urban renewal project a governmental function and utility company thus not entitled to reimbursement from city for line relocation costs]). We have also noted, however, that “the legal classification of a particular municipal activity as governmental or proprietary is, in this transitional age, subject to change with time and circumstance” (Little Joseph Realty v Town of Babylon, 41 NY2d 738, 742 [1977]; see New York Tel. Co., 18 NY2d at 159) and in certain circumstances we have found such a dichotomy unworkable (see Matter of County of Monroe, 72 NY2d 338, 341 [1988] [rejecting use of paradigm in land use context in favor of “balancing of public interests” analytic framework]).
The functioning of this Club for many years as a private facility and the Village’s use of the Club to generate revenue, including its various rental agreements, signal its operation as a business enterprise. By its purchase of the Club, the Village *51 effectively substituted itself for what is traditionally a private enterprise (see Sebastian v State of New York, 93 NY2d at 793). Notably, the Village does not identify any public purpose underlying its acquisition or continued ownership of the Club. Considering that the Board composition is subject to change every January, each of Karedes’s prior contracts — for one or three years beginning and ending in March of the relevant years — similarly bound future boards. Under these circumstances, we conclude that the Village Board of Trustees was acting in its proprietary capacity in contracting with Karedes for management of the Club.
Murphy v Erie County (34 AD2d 295 [4th Dept 1970], affd 28 NY2d 80 [1971]) does not compel a different outcome. While it is true that a “clearly expressed legislative intent” to vest the county with the power to bind future county legislatures was apparent in that case (34 AD2d at 298), we did not hold that such legislation was always necessary for a binding contract. Nor did the result hinge on whether “professional services” were involved.
The Village further argues that the request for declaratory relief is barred by the four-month statute of limitations applicable to article 78 proceedings. The Appellate Division correctly held that the substance of Karedes’s declaratory judgment claim was for contract validation and therefore the claim was governed by a six-year statute of limitations (see Solnick v Whalen, 49 NY2d 224, 229-230 [1980]). Thus, this portion of the proceeding was timely commenced.[2]
Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the case remitted to the Appellate Division for consideration of the issues raised but not determined on the appeal to that Court.
Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Read concur.
Order, insofar as appealed from, reversed, etc.

. Local Law No. 1 (1946) of the Village of Endicott provides that the terms of office of one half of the members of the Board of Trustees expire every January 1 at noon.

. In his appeal to this Court, Karedes does not challenge the dismissal of his request for mandamus relief on timeliness grounds.