Hudson View Park Co. v Town of Fishkill (2024 NY Slip Op 05332)

Hudson View Park Co. v Town of Fishkill

2024 NY Slip Op 05332

Decided on October 30, 2024

Appellate Division, Second Department

Christopher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 30, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
COLLEEN D. DUFFY
LINDA CHRISTOPHER
CARL J. LANDICINO, JJ.

2021-00514
 (Index No. 51846/20)

[*1]Hudson View Park Company, appellant, 
v
Town of Fishkill, et al., respondents.

APPEAL by the plaintiff, in an action, inter alia, to recover damages for breach of contract, from an order of the Supreme Court (Christi J. Acker, J.), dated January 4, 2021, and entered in Dutchess County. The order granted the defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint.

Zarin & Steinmetz, White Plains, NY (Michael D. Zarin, Brad K. Schwartz, and Lee J. Lefkowitz of counsel), for appellant.
Feerick Nugent MacCartney, PLLC, South Nyack, NY (Brian D. Nugent of counsel), for respondents.

CHRISTOPHER, J.

OPINION & ORDER
This appeal presents issues of whether the term limits rule and/or the prohibition against contract zoning are violated by a memorandum of understanding entered into by a private developer and the Town of Fishkill Town Board (hereinafter the Town Board) and the Town of Fishkill Planning Board (hereinafter the Planning Board) that is binding on their successors, and wherein the Town Board agreed, inter alia, not to "terminate its review of the [developer's] Zoning Petition, and the Project in general, until it reaches a final determination on the merits in its legislative judgment regarding the best interests of the Town based upon empirical data and other objective factual bases." For the reasons that follow, we conclude that by its terms such a memorandum of understanding violates both the term limits rule and the prohibition against contract zoning.
Factual and Procedural Background
The plaintiff owns approximately 50 acres of unimproved real property in the Town of Fishkill upon which it proposed to construct a mixed-use residential and commercial project. Approximately 16 acres of the property are located within the planned business zoning district while the remaining acres are located within a multi-family residential zoning district. In furtherance of the project, the plaintiff required a zoning map change to rezone the approximately 16-acre portion of the property to multi-family residential. The plaintiff also required a minor zoning text amendment as well as site development plan approval.
In December 2017, the plaintiff entered into a memorandum of understanding (hereinafter MOU) with the Town Board and the Planning Board, pursuant to which the Town Board agreed, inter alia, "that it shall, in good faith, diligently and reasonably perform its review obligations and cooperate with the [plaintiff] in accordance with all applicable laws." Moreover, it was agreed that the Town Board
"shall not terminate its review of the [plaintiff's] Zoning Petition, and the Project in general, until [*2]it reaches a final determination on the merits in its legislative judgment regarding the best interests of the Town based upon empirical data and other objective factual bases, provided that neither the [Town Board], nor any other Agency or Board of the Town, can commit to any particular outcome with respect to the [zoning map change and zoning text amendment] or Project hereunder, and that nothing contained in this MOU, or any approvals or consents hereby in connection with the Project, shall limit or impair the [Town Board], or any other Agency or Board of the Town, from exercising or performing any regulatory, policing, or permitting functions or obligations, except as otherwise provided herein."
The MOU also provided that it shall be binding upon the parties' successors.
The plaintiff submitted its zoning petition to the Town Board on August 31, 2018. The Town Board referred the petition to the Planning Board for a report and recommendation regarding the proposed zoning changes and to conduct an environmental review process under the State Environmental Quality Review Act, whereupon the review process commenced.
On April 1, 2020, a newly elected Town Board issued a resolution terminating its review of the plaintiff's petition for a zoning map change and zoning text amendment, concluding that it was "in the best interest of the Town to cease further review of the [plaintiff's] Petition." In July 2020, the plaintiff commenced this action against the Town, the Town Board, and the individual members of the Town Board (hereinafter collectively the defendants) based on the Town Board's decision to terminate its review of the project. The plaintiff asserted causes of action alleging breach of contract and breach of duty of good faith and fair dealing and sought to recover, inter alia, damages for its expenditures and costs incurred in processing the zoning petition.
In August 2020, the defendants moved pursuant to CPLR 3211(a)(1) and (7) to dismiss the complaint, arguing, inter alia, that the MOU is not a valid or enforceable contract as the Town Board could not contract away its legislative discretion concerning the proposed zoning amendment, and the term limits rule prohibits a prior town board from binding future town boards with respect to governmental functions. The Supreme Court granted the motion, determining that the MOU is void as it violates the term limits rule, and therefore "[w]ithout a contract, the Complaint fails to state a cause of action for breach of contract and breach of duty of good faith and dealing based upon the MOU." Further, the court determined that "the MOU is void as it constitutes illegal contract zoning." The plaintiff appeals.
Discussion
The Term Limits Rule - The Law
"The term limits rule prohibits one municipal body from contractually binding its successors in areas relating to governance unless specifically authorized by statute or charter provisions to do so. Elected officials must be free to exercise legislative and governmental powers in accordance with their own discretion and ordinarily may not do so in a manner that limits the same discretionary right of their successors to exercise those powers" (Matter of Karedes v Colella, 100 NY2d 45, 50 [citation omitted]; see Morin v Foster, 45 NY2d 287, 293).
"An agreement that violates the term limits rule is against public policy" (Matter of City of Newburgh v McGrane, 82 AD3d 1225, 1227).
The concept of term limits was addressed as far back as 1874 in Richmond County Gas-Light Co. v Town of Middletown (59 NY 228, 232-233), wherein the Court of Appeals determined that a contract entered into by a legislative board that limited the discretion of successor boards to exercise their legislative power was void. In Richmond County Gas-Light Co. (59 NY at 231-232), the board of town auditors of the Town of Middletown was authorized by an act of 1865 to cause the streets of Middletown to be lighted whenever the board deemed necessary, and to contract with the plaintiff to supply the gas for same. The parties entered into such a contract in 1865 for a term of five years, but when the Town apparently failed to honor the contract, the plaintiff commenced an action to "recover for gas furnished in 1870" (id. at 231). The Court of Appeals determined that the plaintiff could not recover under the contract because, among other reasons, under the act of 1865, the existing board of town auditors had no power to determine that "certain streets should be lighted for a great number of years," and to deprive its successors of all control over lighting, "by entering into a contract with the plaintiff for this long term" (id. at 232-233). The Court of Appeals noted that the act "was intended to vest a discretion at all times in the board, whether any and which of the streets should be lighted with gas," and that therefore, the board could "contract [*3]for a supply only during its pleasure" (id. at 233). The Court of Appeals further determined that "[w]hen a majority, either from a change of views of its existing members or the opinion of some of their successors, thought it best to discontinue the light in some or all the streets, they could not be divested of the power so to do by a previous contract entered into for a supply of gas" (id.).
The term limits rule has since evolved and has been invoked in the context of service contracts and employment contracts entered into by municipal bodies, as well as in the context of zoning, when the contracts are binding on the municipal bodies' successors, in areas in which the municipalities are exercising their "governmental powers in accordance with their own discretion" (Matter of Karedes v Colella, 100 NY2d at 50). Classification as to whether a municipal activity is governmental as opposed to proprietary depends on considerations including "whether the activity was historically performed by government, whether it is best executed by government and whether it is undertaken for profit or revenue" (id.). A review of cases from the Appellate Division, Third and Fourth Departments, regarding term limits is instructive.
In Center State Sec. Consultants, Inc. v Syracuse Hous. Auth. (104 AD3d 1334, 1335), the plaintiff entered into a contract with the defendant in 2000, to provide consultation services for the defendant's security operations for a term of 10 years, which contract was approved by the defendant's Board of Commissioners. After a partially new board and new executive director terminated the agreement in 2007, the plaintiff commenced a breach of contract action (see id.). The Fourth Department opined that the contract was unenforceable under the term limits rule, "because defendant's Board exercised governmental powers when it approved the Agreement with plaintiff in January 2000, and because the 10-year term of the Agreement exceeded the term of all members of the Board who approved the Agreement" (id. at 1337). The Fourth Department concluded that "[u]nder the term limits rule, the 2000 Board was not permitted to bind contractually the 2007 Board or any subsequent Board to retain plaintiff as a security consultant" (id.).
In Matter of City of Utica Urban Renewal Agency v Doyle (66 AD3d 1495, 1496), the respondent was employed as executive director of the City of Utica Urban Renewal Agency pursuant to a contract between predecessor members of the agency and the respondent. The Fourth Department determined that "the appointment of an executive director is unquestionably an area[ ] relating to governance" (id. [internal quotation marks omitted]). Further, noting that "[t]he predecessor members of the agency, who were either elected officials or political appointees, had changed completely between the date on which the agreement was executed and the date on which it was terminated" (id. [citation omitted]), the Fourth Department concluded that the agreement "was void as against public policy and thus was not binding on the successor members of the agency" (id.).
In Quigley v City of Oswego (71 AD2d 795, 795), the City of Oswego Planning Board approved a resolution for a change in zoning in 1967 which would permit the plaintiff, a real estate developer, to construct multiple dwellings. Six years later, in 1973, the Common Council enacted a zoning ordinance that reclassified the zoning of the subject lots, prohibiting construction of multiple dwellings without a permit (see id.). The plaintiff's application for a building permit was denied, and he commenced an action against the City "alleging a breach of contract for wrongful change of zoning affecting building lots after approval" (id.). After a jury found that a contractual relationship existed between the City and the plaintiff, the Supreme Court set aside the verdict (see id.). The Fourth Department affirmed, determining that "[z]oning as a legislative act is entitled to the presumption of validity," but "[u]nless specifically provided by statute or charter provisions, the city council cannot contract away or in any manner limit or impair the discretionary authority of future councils in an area relating to governmental or legislative functions" (id.). Thus, "[a]ny such agreement would be invalid" (id.).
In Edsall v Wheler (29 AD2d 622, 622), in an action involving, inter alia, a contract between the defendants and the Village of Ilion providing for the defendants to render services as consulting engineers in the construction of several future projects, the Fourth Department determined that the effort to bind successor boards of the Village to retain the engineers pursuant to the terms of the contract was void as "it purports to bind the village beyond the tenure of the board which made the contract and created an obligation in excess of that board's powers." Citing to 40 NY Jur, Municipal Corporations, § 809, the Fourth Department noted that where a contract involves a matter of discretion to be exercised by the council, the contract cannot extend beyond that council's term, unless the statute conferring power to contract clearly authorizes the council to do so, "since the power conferred upon municipal councils to exercise legislative or governmental functions is [*4]conferred to be exercised as often as may be found needful or politic, and the council presently holding such powers is vested with no discretion to circumscribe or limit or diminish their efficiency, but must transmit them unimpaired to their successors" (Edsall v Wheler, 29 AD2d at 623 [internal quotation marks omitted]).
In Matter of Lake v Binghamton Hous. Auth. (130 AD2d 913, 913-914), the Third Department affirmed the Supreme Court's determination that the provision of a contract between the board of directors of the Binghamton Housing Authority and the petitioner, which granted the petitioner a term of employment as executive director that extended beyond the two-year terms of office of two of the board members, was void as against public policy. The Third Department concluded that "[i]n carrying out its legislative responsibilities and exercising its statutory option to create and then appoint petitioner to the sensitive position of executive director, the Authority was exercising a governmental function," and "[t]herefore, public policy prevented the Board at the time it contracted with petitioner from binding its successors with respect to petitioner's employment" (id. at 914). However, the Third Department also determined that upholding those provisions of the contract with regard to termination benefits inuring to the petitioner was not inconsistent (see id. at 915).
In Matter of Harrison Cent. School Dist. v Nyquist (59 AD2d 434, 435), the appellant, Joseph A. Vassallo, was employed as the attorney for the Harrison Central School District under a three-year contract entered into with the school district in July 1973, when, in July 1974, the Board of Education of the school district voted to discharge him. The Third Department concluded that "the Board of Education exceeded its authority in granting [the] appellant a multiyear contract" (id. at 436). The Third Department noted that the "confidential and personal nature of the functions performed by a school board attorney argues against allowing a school board to bind its successor" (id.). Moreover, the Third Department further noted that the school board in power in July 1973 "sought to bind school boards for a three-year period, despite the fact that the membership of the board changed significantly on July 1 of each year" (id.). Therefore, the Third Department determined that "[t]o allow enforcement of the appellant's contract under such circumstances would violate the general rule that a board does not have the power to enter into employment contracts for professional services which bind successor boards" (id.).
In contrast to the foregoing cases, courts have determined that even when a municipality enters into a contract that binds its successors, the term limits rule is not violated if the municipality is acting in a proprietary capacity, rather than a governmental one (see Matter of Karedes v Colella, 100 NY2d at 50 [Village Board of Trustees entered into a four-year professional services contract with the petitioner for management of a Village-owned golf club which bound successor boards. The Court of Appeals determined that the fact that the club functioned for many years as a private facility and that the Village used the club to generate revenue, "signal[ed] its operation as a business enterprise," and thus, the board was acting in its proprietary capacity in contracting with the petitioner for the management of the club. Therefore, notwithstanding that the contract bound successor boards, the Court of Appeals concluded that the contract was valid and enforceable]; Karedes v Village of Endicott, 297 AD2d 413, 413-415 [Licensing agreement between the plaintiff and the Village, that was renewed by the Village Board of Trustees, and that provided for the plaintiff to operate a restaurant owned by the Village was binding on successor boards inasmuch as the plaintiff was not providing professional services and the Village was acting in a proprietary capacity when it provided the plaintiff with the license]).
A review of the foregoing cases, while instructive, fails to address the particular set of facts present in the instant matter, which, have not yet been addressed by this Court.
The Term Limits Rule Applied to the MOU
The MOU Binds Successor Town Boards
As an initial matter, it is undisputed that by its plain and unambiguous terms the MOU purports to bind successor Town Boards to the obligations set forth therein.
The MOU Concerns a Matter Relating to Governance
The provision of the MOU states in relevant part that the Town Board "shall not terminate its review of the [plaintiff's] Zoning Petition, and the Project in general, until it reaches a final determination on the merits in its legislative judgment regarding the best interests of the Town based upon empirical data and other objective factual bases." This provision, which attempts to constrain the Town Board's decision-making process regarding its zoning responsibilities, implicates the Town Board's governmental and legislative powers, as enacting zoning ordinances is a [*5]significant function of local government (see DJL Rest. Corp. v City of New York, 96 NY2d 91, 96). "[A]mendment of a zoning ordinance is a purely legislative function, and the applicable statute vests in the Town Board broad legislative power, in its discretion, to amend its zoning ordinance, and does not require it to consider and vote upon every application for a zoning change" (Matter of Wolff v Town/Village of Harrison, 30 AD3d 432, 433 [citations omitted]; see Town Law § 265). While the plaintiff acknowledges in the complaint that "Town Boards have absolute discretion to consider zoning amendments" and that "[i]t is an accepted legal axiom that a zoning change is at the absolute discretion of the legislative body," the plaintiff contends that the term limits rule is not violated because the MOU merely committed the Town Board to a rezoning process, and does not mandate a particular outcome. We do not find this argument to be persuasive as the plaintiff is conflating concepts. The plaintiff is equating not contractually binding successor boards to a particular outcome with not binding them in the exercise of their legislative power. Here, the plain language of the MOU unambiguously purports to bind successor boards to continue the review process of the plaintiff's zoning petition until a final determination on the merits is reached, thus eradicating the successor board's discretion to terminate review at any point in time prior to reaching a final determination. Moreover, the MOU also impinges on the legislative discretion of future boards in that it not only requires a review until a final determination is reached, but also, requires that it be based on "empirical data and other objective factual bases."
Contrary to the plaintiff's contention, BT Holdings, LLC v Village of Chester (189 AD3d 754) does not support its position that so long as the MOU does not commit the Town Board to a particular outcome, it is not violative of the term limits rule. First, BT Holdings, LLC, was not decided on the issue of whether a contract violated the term limits rule. The reference to the term limits rule in that case was dicta. This Court stated that had the stipulations at issue "contained a provision that required the Village Board to enact zoning, such a provision is unenforceable" as it would, inter alia, violate the term limits rule (id. at 760-761). However, BT Holdings, LLC, does not support the contention that only a contract that commits a municipality to a particular outcome is violative of the term limits rule, and that a contract that requires anything less, such as the MOU that obligates the Town Board to complete the review process of the plaintiff's zoning petition, would not violate this rule.
Equally unpersuasive is the plaintiff's argument that Matter of Berg v Planning Bd. of the City of Glen Cove (169 AD3d 669) supports its position that the MOU does not violate the term limits rule. Similar to BT Holdings, LLC, Matter of Berg (169 AD3d at 672) noted, in dicta, that if pursuant to the MOU, the defendant were prohibited from taking any action regarding the project at issue, the MOU would have violated the term limits rule. Most importantly, this case was decided on other grounds (see id.).
We reject the plaintiff's contention that the language in the MOU that states that
"neither the [Town Board], nor any other Agency or Board of the Town, can commit to any particular outcome with respect to the [zoning map change and zoning text amendment] or Project hereunder, and that nothing contained in this MOU, or any approvals or consents hereby in connection with the Project, shall limit or impair the [Town Board] or any other Agency or Board of the Town, from exercising or performing any regulatory, policing, or permitting functions or obligations, except as otherwise provided herein,"
is dispositive in evidencing that the Town Board is not committed to any particular outcome, nor is its legislative power limited in any way, and thus the MOU does not violate the term limits rule. The plaintiff fails to acknowledge that while this provision may indicate that nothing in the MOU limits the Town Board in the exercise of its legislative power, that statement is qualified by the language that states "except as otherwise provided herein," thus eviscerating the import of the preceding language. The fact that the MOU may not mandate a particular outcome does not mean, ipso facto, that it fails to violate the term limits rule.
We also reject the plaintiff's argument that if this Court should reach the issue of the term limits rule, it should apply the "balancing of public interests" analysis set forth in Matter of County of Monroe (City of Rochester) (72 NY2d 338, 341) rather than the traditional "governmental versus proprietary distinction" that has been used to determine whether a contract relates to governance. In Matter of County of Monroe (72 NY2d at 340, 345), the Court of Appeals concluded that the expansion, with accessory uses, of an airport owned by the County of Monroe and located substantially in the City of Rochester was immune from, and not subject to, the land use laws of the [*6]City. In making this determination the Court of Appeals abandoned the governmental-proprietary function test, the focus of which is whether the planned uses of the improvements to the County airport were governmental or proprietary, and replaced it with a "balancing of public interests" test that it found more appropriate (see id. at 341). Factors to be considered in applying the "balancing of public interests" test, include, inter alia, "the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests" (id. at 343 [internal quotation marks omitted]). However, Matter of County of Monroe is inapposite to the instant matter. Matter of County of Monroe (72 NY2d at 340-341) concerned a zoning conflict between two governmental entities, where the question was whether an entity owned and operated by the County and located within the City was subject to, or immune from, the City's zoning regulations. The issues posed with regard to the distinction between governmental and proprietary functions that are present in the context of resolving zoning conflicts between two government entities, are not present in the instant matter, where the issue is whether a MOU that was entered into between a private developer and a municipality, and which purports to bind their successors, violates the term limits rule. Moreover, the term limits rule is implicated where the municipality contractually binds its successors in areas relating to governance, rather than in proprietary matters. In the instant matter, the governmental-proprietary distinction is clear, as the MOU concerns the Town Board's legislative power to enact zoning changes which is undoubtedly a governmental function.
Even if we were to examine this matter in light of the "balancing of public interests" test as the plaintiff suggests, we are not convinced that the argument proposed by the plaintiff tips the scales in its favor. The plaintiff argues that the developer will be placed in an untenable position if the MOU is not upheld. The plaintiff, and developers in general, it argues, will be placed in a position of expending large amounts of investment capital without the benefit of a bargained-for agreement on the part of the municipality to, at least, see the process to completion. However, this argument must be balanced against the constitutional rights of the populace to choose governmental leaders who support its position. The plaintiff's arguments fail when balanced against such preeminent rights (see generally Matter of Karedes v Colella, 100 NY2d at 50).
There Is No Statutory Authorization for Binding Successor Boards
Further, while a contract entered into by a town board that binds successor boards in areas relating to governance would not violate the term limits rule, if such a contract were "specifically authorized by statute or charter" (Matter of Karedes v Colella, 100 NY2d at 50), contrary to the plaintiff's contention, Town Law §§ 29(16) and 64(6) do not specifically authorize the Town Board to enter into such a MOU that binds successor boards. Town Law § 64(6) provides that a town board "[m]ay award contracts for any of the purposes authorized by law and the same shall be executed by the supervisor in the name of the town after approval by the town board." Pursuant to Town Law § 29(16) a town supervisor "[s]hall have and exercise any other power or duty expressly conferred or imposed upon him [or her] by law and such powers and duties of administration and supervision of town . . . functions as shall be provided by resolution of the town board, to be performed on behalf of such board." By their plain reading, Town Law § 64(6) does no more than grant a town board general authority to enter into and award contracts for purposes authorized by law while Town Law § 29(16) concerns the powers of a supervisor, and does not even address the powers of a town board with regard to contracting. Neither of these statutes specifically confers authority upon a town board to bind future boards in the exercise of their legislative powers related to zoning changes. This is in direct contrast to those cases in which courts have found that a statute or charter specifically authorizes a municipal body to bind its successors in areas relating to governmental matters (see Morin v Foster, 45 NY2d at 293 [in a case where the county legislators were elected for a two-year term, and the county charter specifically provided for appointment of the county manager to a four-year term, the Court of Appeals concluded that "[b]y authorizing appointment to a four-year term the charter empowers the legislature to bind its successors" with regard to appointment of the county manager]; Matter of Reese v Lombard, 47 AD2d 327, 331 [the Fourth Department determined that a public employee contract executed by the sheriff and the county manager, and approved by the legislature, bound the sheriff's successor, under circumstances where the state legislature which granted broad power to the sheriff to hire and fire his employees, qualified the exercise of that power by provisions of the Taylor Law. The Fourth Department noted that the Taylor Law provides that "the parties may make contracts which bind them for the period [*7]set forth therein[;] [t]he term was left to the discretion of the contracting parties and nothing contained in the law suggests that the legislature intended to restrict the period of such contracts to an elected public employer's time in office. Manifestly such periods have no necessary relationship to employees' terms and conditions of employment" (citation and internal quotation marks omitted]).
The MOU Violates the Term Limits Rule
Accordingly, where as here, there is no specific statutory authorization to bind successor boards, a board may not contractually bind successor boards with regard to the process of reaching a determination regarding a zoning change, which is clearly a governmental function; such a contract violates the term limits rule and is "void as against public policy" (Matter of City of Utica Urban Renewal Agency v Doyle, 66 AD3d at 1496; see Quigley v City of Oswego, 71 AD2d at 795). Protecting the ability of a successor board to freely exercise its legislative power in accordance with its own discretion with regard to the process of reaching a determination regarding a zoning change is of no less import than it is with regard to reaching the final determination itself. Each board must maintain its autonomy and must be imbued with full discretion when exercising its legislative functions with regard to making a decision concerning a zoning change, including its right not to continue the review process until a final determination on the merits is reached.
The MOU Constitutes Illegal Contract Zoning
As previously discussed in the context of the term limits rule, enacting and amending zoning ordinances is a legislative function vested in the Town Board by statute (see Town Law § 265; DJL Rest. Corp. v City of New York, 96 NY2d at 96; Matter of Wolff v Town/Village of Harrison, 30 AD3d at 433). "[N]o municipal government has the power to make contracts that control or limit it in the exercise of its legislative powers and duties" (Collard v Incorporated Vil. of Flower Hill, 52 NY2d 594, 601; see Matter of Neeman v Town of Warwick, 184 AD3d 567, 570). "All legislation by contract is invalid in the sense that a Legislature cannot bargain away or sell its powers" (Church v Town of Islip, 8 NY2d 254, 259 [internal quotation marks omitted]; see Citizens to Save Minnewaska v New Paltz Cent. School Dist., 95 AD2d 532, 534). "Municipal corporations have no power to make contracts which will embarrass or control them in the performance of their legislative powers and duties" (Matter of Andgar Assoc. v Board of Zoning Appeals of Inc. Vil. of Port Washington N., 30 AD2d 672, 674). In determining whether the MOU constitutes illegal contract zoning "[t]he test is whether the [MOU] committed the [Town Board] to a specific course of action with respect to a zoning amendment" (Matter of Neeman v Town of Warwick, 184 AD3d at 570).
In Matter of Neeman v Town of Warwick (184 AD3d at 570), this Court determined that a development agreement between the Town of Warwick Town Board and Black Bear Family Campground, Inc., the operator of a campground, constituted illegal contract zoning. The Town Board agreed it would amend the zoning code's time limit to stay at the campground from the current 120-day occupancy to permit 210-day occupancy, and would not modify the bulk requirements so as to affect density restrictions for campgrounds in the zoning code prior to the approval of the campground's application for site plan approval, in exchange for the campground's agreement that the new 210-day occupancy limit would apply to all campsites, including the original 74 approved campsites (see id. at 568, 570). This Court concluded that "[t]his was an agreement binding on [the campground] to give a form of consideration in exchange for legislative action and to limit the Town Board's authority to change the bulk requirements in the zoning code until such time as [the campground] would not be negatively affected by such change" (id. at 570).
However, where nothing in an agreement entered into by a municipality commits the municipality to a specific course of action with respect to a zoning amendment, courts have held that the municipality has not engaged in contract zoning (see Matter of Save Harrison, Inc. v Town/Village of Harrison, NY, 168 AD3d 949, 952-953; Matter of DePaolo v Town of Ithaca, 258 AD2d 68, 71).
In Matter of Save Harrison, Inc. v Town/Village of Harrison, NY (168 AD3d at 950), in order to resolve litigation related to the operation of a quarry in the Town of Harrison, the Town and the owner of the quarry entered into a settlement agreement "whereby the owner would discontinue quarry operations and the Town would entertain an application for approval of a senior living facility on the site." This Court determined that "[a]s nothing in the . . . settlement agreement committed the Town to a specific course of action with respect to the zoning amendment, [the zoning amendment] did not constitute impermissible contract zoning" (id. at 952-953).
Similarly, in Matter of DePaolo v Town of Ithaca (258 AD2d at 71), the Third [*8]Department concluded that the Town Board of the Town of Ithaca did not engage in contract zoning. The Town Board amended a zoning ordinance to accommodate a cooling system project Cornell University was constructing, "in exchange for Cornell's granting the Town a 99-year license to use certain property as a public park" (id.). The Third Department noted that "[n]othing in its agreement with Cornell committed the Town to a specific course of action with respect to the zoning amendment and, . . . [w]hile Cornell's grant of the license to the Town was conditioned upon its receipt of all approvals required for the project, including rezoning, no provision in the agreement obligated the Town to issue such approvals or approve Cornell's rezoning application" (id.).
Contrary to the plaintiff's contention, the MOU commits the Town Board to a specific course of action and constitutes illegal contract zoning. As previously discussed, the plain language of the MOU commits the Town Board to a review of the plaintiff's zoning petition, and purports to forbid termination of the review process until the Town Board reaches a final determination on the merits. Such determination must be based upon "empirical data and other objective factual bases." Such language evidences that the MOU was clearly meant to commit the Town Board to a specific course of action with respect to the review process of the zoning petition.
The MOU is more akin to the agreement in Matter of Neeman (184 AD3d at 570) that was found to constitute illegal contract zoning, wherein the agreement committed the Town Board to certain legislative action and to limit its authority to change certain aspects of the zoning code, than it is to the agreements in Matter of Save Harrison and Matter of DePaolo, which were determined not to constitute illegal contract zoning. Despite the plaintiff's arguments that rely upon records that are dehors the record, and are therefore not considered, the MOU before us obligates the Town Board to proceed in a very specific manner with regard to the review process of the plaintiff's zoning petition. This Court's decision and order in Matter of Save Harrison (168 AD3d at 950) provided that the Town did no more than commit to "entertain" an application for approval of a senior living facility on the site without a commitment as to manner of process or basis of outcome. The agreement in Matter of DePaolo (258 AD2d at 71) did not obligate the Town to issue approvals or approve the applicant's rezoning application.
Moreover, as previously discussed with regard to the issue of the term limits rule, and for similar reasons, the plaintiff's reliance on BT Holdings, LLC v Village of Chester (189 AD3d 754) to support its position that the MOU does not constitute illegal contract zoning is misplaced. The reference to contract zoning in BT Holdings, LLC, was dicta, just as it was with regard to the issue of the term limits rule. In BT Holdings, LLC (189 AD3d at 760), this Court determined that the Village Board did not violate the stipulations at issue, inasmuch as they did not obligate the Village Board to enact zoning. This Court then determined that had the stipulations contained such a provision, such a provision would be unenforceable (see id. at 760-761). The dicta in BT Holdings, LLC, does not stand for the proposition that an agreement, such as the MOU, that commits a town board to something less than a final determinative action on a zoning change, is legal.
Additionally, we are not persuaded by the plaintiff's argument that the MOU did not commit the Town Board to a specific course of action, and thus did not constitute illegal contract zoning, based on the plaintiff's interpretation that a "specific course of action" refers only to a final determinative action on a zoning change, not the review process leading up to the determination. Once again, as it did in the context of its term limits arguments, the plaintiff is attempting to make a distinction between a contract that commits a town board to a process regarding a zoning application versus one that commits a town board to a final determination on the application. Under the circumstances here, this is a distinction without a difference. We see no basis to confine the prohibition against a contract committing a town board to a specific course of action with respect to a zoning application to only those contracts that obligate the board to reach a final determination on zoning. The MOU commits the Town Board to a very specific course of action in that it not only requires the Town Board not to terminate review until it reaches a final determination on the merits, but that the determination must be based on very specific factors, i.e., "empirical data and other objective factual bases."
Further, there is no merit to the plaintiff's argument that the inclusion of the language in the MOU requiring the Town Board not to terminate its review process until it reaches a final determination on the merits based upon "empirical data and other objective factual bases" does not limit the Town Board's legislative discretion. Based on a strained reading of the MOU, the plaintiff contends that this language was only included to acknowledge the "timing" of the Town Board's vote, when in fact it is clear that it is a mandate for how the Town Board must reach a final [*9]determination on the plaintiff's zoning petition.
Thus, the MOU illegally bargains away the Town Board's exercise of legislative power with regard to review of the plaintiff's zoning petition (see Church v Town of Islip, 8 NY2d at 259; Matter of Neeman v Town of Warwick, 184 AD3d at 570).
The Defendants' Motion to Dismiss
The Supreme Court properly granted dismissal of the cause of action alleging breach of contract pursuant to CPLR 3211(a)(1). Here the MOU, submitted by the defendants in support of the motion, utterly refutes the plaintiff's factual allegations and conclusively establishes a defense as a matter of law, as by its express terms the MOU violates the term limits rule and constitutes illegal contract zoning, and therefore is void and unenforceable (see CPLR 3211[a][1]; Matter of Neeman v Town of Warwick, 184 AD3d at 570; Quigley v City of Oswego, 71 AD2d at 795).
For the same reasons, the Supreme Court properly granted dismissal of the cause of action alleging breach of duty of good faith and fair dealing pursuant to CPLR 3211(a)(1). The successor Town Board that resolved to terminate review of the plaintiff's zoning petition cannot be found to have breached the implied covenant of good faith and fair dealing of a MOU that is void and unenforceable (see generally Seidel v 18 E. 17th St. Owners, 79 NY2d 735, 744). The cases relied upon by the plaintiff for the proposition that the obligation of good faith should be enforced irrespective of the determinations regarding contract zoning or term limits are inapplicable, as none of those cases concerns contracts that were determined to be void and unenforceable, as in the instant matter (see e.g. Goodstein Constr. Corp. v City of New York, 80 NY2d 366; Halpern Dev. Venture v Board of Trustees of Vil. of N. Tarrytown, 222 AD2d 652; Goodstein Constr. Corp. v City of New York, 111 AD2d 49, affd 67 NY2d 990; Sportsinsurance.com, Inc. v Hanover Ins. Co., Inc., 2021 WL 1404581, 2021 US Dist LEXIS 71886 [ND NY, 8:20CV0403 (LEK/DJS)]). 
The parties' remaining contentions either need not be reached in light of our determination or are not properly before this Court.
Accordingly, the order is affirmed.
DILLON, J.P., DUFFY and LANDICINO, JJ., concur.
ORDERED the order is affirmed, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court