Hudson View Park Co. v Town of Fishkill (2025 NY Slip Op 07080)

Hudson View Park Co. v Town of Fishkill

2025 NY Slip Op 07080

Decided on December 18, 2025

Court of Appeals

Singas

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 18, 2025

No. 115 

[*1]Hudson View Park Company, Appellant,
v
Town of Fishkill, et al., Respondents.

Lee J. Lefkowitz, for appellant. 
Brian D. Nugent, for respondents. 

SINGAS, J.

This appeal concerns plaintiff's rezoning request associated with a proposed real estate development project in the Town of Fishkill. The parties dispute whether a memorandum of understanding (MOU) governing the Town's review of plaintiff's zoning petition is unenforceable under the term limits doctrine (see generally Matter of Karedes v Colella, 100 NY2d 45 [2003]). We agree with the Appellate Division that the MOU is unenforceable and that the complaint was therefore properly dismissed.
[*2]I.
Plaintiff owns adjacent parcels of land in the Town that surround another parcel owned by the Town. Plaintiff wanted to acquire the Town's parcel and develop the entire site into a "residential and commercial community." The project required the Town's Board to approve certain zoning amendments at plaintiff's request and also required an environmental review by the Town's Planning Board under the State Environmental Quality Review Act (SEQRA) (ECL art 8). Procedurally, the Town Board could not vote on plaintiff's zoning petition until the Planning Board completed its SEQRA review.
In 2017, while plaintiff was preparing its zoning petition, plaintiff and the Town executed an MOU, a copy of which plaintiff attached to the complaint. The MOU purported to bind its signatories and their "successors." As relevant here, it stated that "[t]he Town shall not terminate its review of [plaintiff's z]oning [p]etition, and the [p]roject in general, until it reaches a final determination on the merits in its legislative judgment regarding the best interests of the Town based upon empirical data and other objective factual bases." The MOU further provided that the Town could not "commit to any particular outcome with respect to the [z]oning [a]mendments or [p]roject," and that the MOU "shall [not] limit or impair the Town . . . from exercising or performing any regulatory, policing or permitting functions or obligations, except as otherwise provided herein." The MOU also noted that the Town Board had voted to "approve[ ] this MOU for execution by the [Town] Supervisor on behalf of the Town." To that end, the Town Board enacted a resolution "approv[ing]" the MOU and authorizing the Supervisor to execute it.
Plaintiff submitted its zoning petition to the Town Board after the MOU's execution. Plaintiff also separately initiated and worked on the project's SEQRA review process, including by allegedly paying for consultants to facilitate the Planning Board's SEQRA review and allegedly spending "hundreds of thousands of dollars" on analyses of the project proposal.
In November 2019, while the zoning petition and SEQRA review remained pending, the Town held local elections. The incumbent Town Supervisor ran for reelection against defendant Ozzy Albra, whose campaign platform allegedly included opposing plaintiff's project. Albra was elected Supervisor, and the Town Board's composition changed. Months later, the newly elected Town Board held an executive session from which Supervisor Albra allegedly emerged and stated, "Citizens of Fishkill, you're going to like this," before announcing that the Town Board would vote on a resolution terminating review of plaintiff's zoning petition. The Town Board then unanimously approved the resolution, which also directed the Town Clerk to send the Planning Board a copy of the resolution "so the [project's] SEQRA review may also cease from proceeding further."
Plaintiff then commenced this action against the Town, the Town Board, Supervisor Albra, and each of the Town Board's members, claiming breach of contract and breach of the implied covenant of good faith and fair dealing. In response, defendants moved to dismiss the complaint under CPLR 3211 (a) (1) and (7), arguing that the MOU is invalid and unenforceable under the term limits doctrine and the contract zoning doctrine. Supreme Court granted the motion and dismissed the complaint (see 2021 NY Slip Op 34197[U] [Sup Ct, Dutchess County 2021]), and the Appellate Division affirmed (see 234 AD3d 40 [2d Dept 2024]). Plaintiff appealed to this Court as of right, asserting that the Appellate Division order directly involved a substantial constitutional question (see CPLR 5601 [b] [1]). We conclude that no appeal lies as of right,[FN1] but [*3]on our own motion, we grant plaintiff leave to appeal (see Matter of McGee v Korman, 70 NY2d 707, 707 [1987]; Matter of Tinsley v Warner, 56 NY2d 713, 713 [1982]; Matter of Gonzalez (Ross), 47 NY2d 922, 922 [1979]).
II.
"The term limits rule prohibits one municipal body from contractually binding its successors in areas relating to governance unless specifically authorized by statute or charter provisions to do so" (Karedes, 100 NY2d at 50, citing Morin v Foster, 45 NY2d 287, 293 [1978]). It recognizes that "[e]lected officials must be free to exercise legislative and governmental powers in accordance with their own discretion and ordinarily may not do so in a manner that limits the same discretionary right of their successors" (id.). The doctrine thus instructs "that where a contract 'involves a matter of discretion to be exercised by the [municipal body,] unless the statute conferring power to contract clearly authorizes th[at body] to make a contract extending beyond its own term, no power . . . so to do exists' " (Edsall v Wheler, 29 AD2d 622, 622-623 [4th Dept 1967]). The term limits doctrine reaches only "matters relating to governmental or legislative functions" (Morin, 45 NY2d at 293) and does not apply where the municipality is "acting in its proprietary capacity" (see Karedes, 100 NY2d at 51 [term limits doctrine inapplicable where municipality "was acting in its proprietary capacity in contracting . . . for management of (its golf club)"]).
The MOU requires the 2017 Town Board's "successors" to resolve the Town's "review of [plaintiff's z]oning [p]etition, and the [p]roject in general," by "reach[ing] a final determination on the merits." This contractual restriction impermissibly constrains successor Town Board members' legislative authority over zoning as conferred by Town Law § 265 (1), which broadly empowers town boards to "amend[ ]" their towns' zoning restrictions "from time to time," and Statute of Local Governments § 10 (6), which broadly empowers localities "to adopt, amend and repeal zoning regulations." We have long recognized—and plaintiff concedes—that localities exercise plenary authority over local zoning matters and bear no obligation "to consider and vote upon . . . every [zoning] application" they receive (Matter of Society of N.Y. Hosp. v Del Vecchio, 70 NY2d 634, 636 [1987]; see Rodgers v Village of Tarrytown, 302 NY 115, 121 [1951] ["the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned"]; Matter of Cowan v Kern, 41 NY2d 591, 599 [1977] ["Absent arbitrariness, it is for locally selected and locally responsible officials to determine where the public interest in zoning lies"]). Yet the MOU requires future boards to do precisely that. As Supreme Court aptly put it, the MOU thus violates "the [successor] Town Board's right not to vote on the [zoning] application" (2021 NY Slip Op 34197[U], *7).
The MOU also requires future Town Board members to vote on plaintiff's zoning petition based on only "empirical data and other objective factual bases." This language impermissibly precludes successor legislators from considering any other valid factor, such as community opposition. Indeed, Supervisor Albra allegedly ran for office on a platform that included opposing plaintiff's project, won the election, and then announced the Town Board's termination of the zoning petition's review. Plaintiff does not assert that absent the MOU, this exercise in representative democracy, which plaintiff criticizes as animated by "political considerations" in violation of the MOU, was legally improper. Instead, seemingly recognizing this provision's infirmity, plaintiff disclaims it altogether and asks us to sever this requirement from the rest of the agreement. But plaintiff identifies no authority suggesting that we may rewrite the MOU in plaintiff's favor by enforcing only its lawful provisions to ensure that it survives legal scrutiny, absent any evidence that the parties intended such a result.
For all these reasons, we conclude that by entering into the MOU, the Town Board violated the term limits doctrine by purporting to "limit" a "discretionary right of [its] successors," rendering the MOU invalid and unenforceable (Karedes, 100 NY2d at 50). Absent an enforceable agreement, plaintiff's contractual claims fail as a matter of law.
In resisting this conclusion, plaintiff alternatively argues that the term limits doctrine does not apply in the first place on these facts. We reject that contention. First, plaintiff suggests that the MOU does not implicate any "area[ ] relating to [town] governance" (id.). But a municipality's zoning function "[i]s that of a legislative body" and is plainly governmental in nature (Matter of Neddo v Schrade, 270 NY 97, 101 [1936]; see e.g. Suffolk Hous. Servs. v Town of Brookhaven, 70 NY2d 122, 130 [1987], citing Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookdale, 51 NY2d 338, 347 [1980], and Berenson v Town of New Castle, 38 NY2d 102, 111 [1975] ["Zoning, we have already recognized, is an essentially legislative task"]; see also 8 McQuillin, Municipal Corporations § 25:60 & n 1 [3d ed, June 2025 update] ["It is fundamental that the enactment of a zoning ordinance constitutes the exercise of a legislative and governmental function"]). Second, plaintiff urges that the MOU restricts only the Town's "process" in determining the zoning petition, rather than the petition's substantive outcome. But even assuming, without deciding, that merely "procedural" contracts do not violate the term limits doctrine, plaintiff's process-versus-outcome distinction fails. As already explained, the MOU prohibits the Town Board from considering otherwise permissible factors and from reaching otherwise permissible substantive outcomes on the zoning petition. The MOU therefore is not limited to the mere "process" by which plaintiff's zoning petition was determined.
Plaintiff also notes that the term limits doctrine does not preclude contracts that are "specifically authorized by statute or charter provision[ ]" (Karedes, 100 NY2d at 50, citing Morin, 45 NY2d at 293) and asserts that the MOU is specifically authorized by Town Law § 64 (6). We disagree. Town Law § 64 (6) is a general enabling statute, entitled "General powers of town boards," authorizing town boards to "award contracts for any of the purposes authorized by law." Other localities' enabling statutes use similarly broad language: for example, Second Class Cities Law § 3 (4) and Village Law § 1-102 (5) confer the power "[t]o contract and be contracted with." If such statutes sufficed to "specifically authorize" contracts otherwise violating the term limits doctrine, then in effect, the doctrine would not apply to any contracts entered into by these municipal entities, which has never been the state of the law (see BT Holdings, LLC v Village of Chester, 189 AD3d 754, 761 [2d Dept 2020] [applying term limits doctrine in contractual action against a village]; Quigley v City of Oswego, 71 AD2d 795, 795 [4th Dept 1979] [same, against a city]). In any event, Town Law § 64 (6) authorizes only contracts made for "purposes authorized by law"; but absent specific legislative authorization, a contract violating the term limits doctrine is not authorized by law. Therefore, the statute does not suffice by its terms.
Nor does the Town Board's resolution authorizing the MOU's execution suffice to specifically authorize the MOU for present purposes. For one, the resolution is not a "statute or charter provision[ ]" capable of authorizing the MOU under the term limits doctrine (Karedes, 100 NY2d at 50, citing Morin, 45 NY2d at 293). We have never held that a town board can grant itself by resolution the power to take actions that the term limits doctrine otherwise precludes. Moreover, Town Law § 64 (6) requires that all town contracts "shall be executed by the supervisor . . . after approval by the town board." Holding that the term limits doctrine is satisfied by a town board's approval of a town contract—where state law requires town boards to approve every town contract—would again effectively mean that the doctrine has no application to town contracts at all.
Lastly, plaintiff asks us to hold that the term limits doctrine is governed by a balancing test that weighs the competing public interests implicated by the specific project or government action at issue. Our case law makes clear, however, that the governing legal standard asks whether the municipal body purported to "contractually bind[ ] its successors in [an] area[ ] relating to governance," with no balancing test involved (Karedes, 100 NY2d at 50). Any such test would encroach on localities' legislative authority: [*4]courts would have to determine for themselves, case by case, whether they believe the public interest favors allowing prior legislators to bind their successors. The very point of the term limits doctrine, though, is that successor legislators must remain free to weigh their constituents' interests in the manner they deem best. Plaintiff's proposed test is therefore untenable.[FN2]
Plaintiff's remaining contentions are academic in light of our determination.
Accordingly, the appeal taken as of right should be dismissed, without costs, upon the ground that no substantial constitutional question is directly involved; on the Court's own motion, plaintiff should be granted leave to appeal; and the order of the Appellate Division should be affirmed, with costs.

WILSON, Chief Judge (concurring):

In Supreme Court, Hudson View Park Company chose not to articulate the constitutional origins of the "term limits doctrine." That decision appears to have been deliberate, because doing so would have impaired its argument on the merits.
I agree with the majority that the Memorandum of Understanding (MOU) between Hudson View and the Town of Fishkill violated the term limits doctrine, but write separately to explain why Hudson View has waived any argument that the term limits doctrine, in this case, raises a directly involved, substantial constitutional question.
* * *
In Supreme Court, the Town of Fishkill moved to dismiss Hudson View's complaint arguing that the MOU is invalid and unenforceable under the term limits doctrine and the contract zoning doctrine. Hudson View opposed the Town of Fishkill's motion on the ground that the MOU did not violate the term limits doctrine because the Town Board acted pursuant to its statutory authority authorizing it to enter into such a contract (N.Y. Town Law § 64 [6]; id. § 29 [16]). Hudson View chose not to articulate its theory of the constitutional origins or implications of the term limits doctrine. That choice effects a waiver of Hudson View's argument that the term limits doctrine, in this case, raises a directly involved, substantial constitutional question conferring a right to appeal.
The term limits doctrine "prohibits one municipal body from contractually binding its successors in areas relating to governance unless specifically authorized by statute or charter provisions to do so" (Matter of Karedes v Colella, 100 NY2d 45, 50 [2003])[FN*]. The rule permits Hudson View to argue, as it chose to do in isolation, that the Town Board was statutorily authorized to prohibit a future Town Board from terminating review of Hudson
View's zoning petition. By resting solely on the statutory exclusion exception in the doctrine, Hudson View was arguing that the MOU was outside of the sweep of the doctrine, whatever its nature.
Had Hudson View argued in Supreme Court that the term limits doctrine was constitutionally based, thereby putting at issue its historical context, Hudson View would have jeopardized its pure reliance on the doctrine's exclusion for statutory authorization. The U.S. Supreme Court has warned that even where one legislature may bind its successor "such contracts could become a threat to the sovereign responsibilities of state governments" (United States v Winstar Corp., 518 US 839, 874 [1996]). To address such threats, the U.S. Supreme Court developed additional doctrines to limit the recognition of "contractual restraints upon [*5]legislative freedom" and "protect state regulatory power" (id.). Those doctrines include (1) the "reserved powers" doctrine, which like the "contract zoning" doctrine, holds that states cannot contract away "certain substantive powers of sovereignty" (id.; see e.g. West River Bridge Co. v Dix, 6 How. 507 [1848] [eminent domain]; Stone v State of Mississippi, 101 US 814 [1879] [police power]); and (2) the "unmistakability doctrine," which holds that "neither the right of taxation, nor any other power of sovereignty, will be held . . . to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken" (Winstar, 518 US at 874-875 [internal quotation marks omitted], citing Jefferson Branch Bank v Skelly, 1 Black 436, 446 [1862]). "A requirement that the government's obligation unmistakably appear thus served the dual purposes of limiting contractual incursions on a State's sovereign powers and of avoiding difficult constitutional questions about the extent of state authority to limit the subsequent exercise of legislative power" (id. at 875).
By alerting Supreme Court to the constitutional implications of the doctrine, and the U.S. Supreme Court's subsequent efforts to narrow the doctrine's reach and safeguard against contractual encroachments on state sovereignty, Hudson View would have made Supreme Court even less likely to enforce the MOU. Although still unsuccessful, it was a better strategic decision for Hudson View to focus the court's attention on the plain language of the rule and the alleged enabling statute, rather than the constitutional bounds that operate to cabin what any enabling statute can authorize. Hudson View, therefore, did not stand to gain from affirmatively raising the constitutional basis of the term limits doctrine because to do so would have inevitably raised bedrock principles aimed at protecting state sovereignty, cutting against Hudson View's position on the merits.
But now, to secure an appeal as of right from this Court, Hudson View expressly contends that the term limits doctrine is constitutional. The problem with Hudson View's position is that its prior decision was a strategic one, and having chosen a path that eschewed the constitutional basis for the term limits rule, it should not be allowed to change course to claim a right to appeal when it should have been required to seek leave to do so, which would have entitled Fishkill to respond to a motion for leave.
Happily and unhappily for Hudson View, in this highly unusual circumstance, our Court has granted leave to appeal sua sponte and agrees unanimously that on the merits, the MOU violates the term limits doctrine and is unenforceable against the Town of Fishkill.
Appeal taken as of right dismissed, without costs, upon the ground that no substantial constitutional question is directly involved. On the Court's own motion, leave to appeal granted to plaintiff. Order affirmed, with costs. Opinion by Judge Singas. Judges Garcia, Cannataro and Troutman concur. Chief Judge Wilson concurs in result in an opinion, in which Judges Rivera and Halligan concur.
Decided December 18, 2025

Footnotes

Footnote 1: No argument was raised at Supreme Court in constitutional terms, and at the Appellate Division, plaintiff argued that the term limits rule is a common law doctrine. In affirming Supreme Court's dismissal of this breach of contract action, the Appellate Division agreed with Supreme Court that the MOU "is void as against public policy" (234 AD3d at 53 [internal quotation marks omitted]) and is also unenforceable because it "constitutes illegal contract zoning" (id. at 57). Therefore, regardless of any purported "waiver" of the right to appeal (see generally concurring op), the appeal taken as of right must be dismissed for lack of a directly involved substantial constitutional question (see CPLR 5601 [b] [1]; Town of Hardenburgh, Ulster County, N.Y. v State of New York, 52 NY2d 536, 540 [1981], appeal dismissed 454 US 958 [1981]; Di Bella v Di Bella, 47 NY2d 828, 829 [1979]; Matter of Glen Mohawk Milk Assn. v Wickham, 21 NY2d 719, 720 [1967]; accord Arthur Karger, Powers of the New York Court of Appeals § 7:4 [Sept 2025 update]). We express no view on the academic issue of whether the term limits doctrine is of constitutional dimension (see concurring op at 3-4), which is irrelevant to our lack of jurisdiction over this as-of-right appeal.

Footnote 2: We do not opine on whether, in a case where the proprietary-governmental "dichotomy [is] unworkable," a " 'balancing of public interests' analytic framework" may inform whether the term limits doctrine reaches the function at issue (Karedes, 100 NY2d at 50, quoting Matter of County of Monroe (City of Rochester), 72 NY2d 338, 341 [1988] [using such a balancing test to resolve "a conflict between the zoning ordinance of one political unit and the statutory authority of another (political) unit to perform (the) designated public function" of operating a municipal airport]).

Footnote *: As the majority notes, the term limits doctrine does not apply when the municipality is "acting in its proprietary capacity" (Karedes, 100 NY2d at 51; see majority op at 5).