[687 NYS2d 353]

HELMSLEY-SPEAR, INC., Appellant, v NEW YORK BLOOD CENTER, INC., Respondent.

First Department, April 1, 1999

## APPEARANCES OF COUNSEL

*James E. Schwartz* of counsel (*Carb, Luria, Cook & Kufeld L. L. P.,* attorneys), for appellant.

*Hal S. Shaftel* of counsel (*Louis M. Solomon* on the brief; *Solomon, Zauderer, Ellenhorn, Frischer & Sharp,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

Plaintiff, Helmsley-Spear, Inc., a licensed real estate broker, appeals from the denial of its motion for summary judgment against defendant New York Blood Center, Inc., the owner of the property in question, in this action to recover commissions due under a separate brokerage agreement between the two. The facts are essentially undisputed.

In 1995, Henry Widmaier, a duly licensed broker with Helmsley-Spear, learned that the Blood Center was interested in selling its commercial building at 22 Ericsson Place, located in the Tribeca section of Manhattan. In 1996, Widmaier brought to the Blood Center's attention a potential buyer. Widmaier asserts that the prospective buyer was Joseph P. Lombardi, an architect, active in real estate in the Tribeca area, who had formed several limited partnerships and limited liability companies to purchase commercial properties for conversion to residential use. The Blood Center maintains that the prospective buyer was North Moore-Ericsson Owners, LLC. Widmaier had numerous discussions with Lombardi, John F. Wurmser, the Blood Center's chief financial officer, and other Blood Center representatives regarding a sale of the property.

At a May 8, 1996 meeting in which Widmaier actively participated, and at which Lombardi and Martin Shaw, an attorney, were present, an agreement was reached for the sale of the building at a price of $8,250,000 and with a closing date on or about May 30, 1997. On that same date, Helmsley-Spear and the Blood Center signed an agreement which authorized Helmsley-Spear to provide brokerage services in connection with the proposed sale of the property. If Helmsley identified a buyer for the property, it would, at the closing of title, receive a commission of 6% of the first million dollars of purchase price and 3% of the balance. The next day, Martin Shaw wrote to the Blood Center confirming the terms and conditions of the sale to "our client's investment group", identified as "North Moore-Ericsson Owners, LLC", as purchaser. It is undisputed

that North Moore-Ericsson Owners, LLC never existed, but was merely a nominee under which Lombardi and his partners, Jack Lefkowitz and Abraham Berkowitz, were going to take title.

Three weeks later, on May 31, 1996, the Blood Center, as seller, and 27 North Moore Associates, LLC, Lombardi's chosen nominee, as purchaser, signed a contract of sale agreeing to an $8,250,000 purchase price and a May 30, 1997 closing date. North Moore is a limited liability company consisting of Lombardi and Lefkowitz and Berkowitz, who supplied the financing in other conversions.

Section 18 of the contract of sale, in relevant part, provided: "Purchaser and Seller each represents to the other that they have dealt with no broker other than Helmsley-Spear, Inc. (the 'Broker') in connection with this Agreement and the transaction contemplated by this Agreement; and that neither the Purchaser nor Seller knows of any other broker which has claimed or may have the right to claim a commission or any other compensation in connection with such transaction * * *. Seller shall pay any brokerage commission in accordance with Seller's agreement with the Broker and shall indemnify and hold Purchaser harmless from any claim of the Broker for such commission."

The transaction closed on or about May 28, 1997, with title passing to North Moore. Under the brokerage agreement's formula, Helmsley-Spear claims entitlement to a commission of $277,500, which the Blood Center refuses to pay. Helmsley-Spear's complaint asserts two causes of action, one in contract and the other based on quantum meruit. After joinder of issue, Helmsley-Spear moved for summary judgment, arguing that the Blood Center's admission in the contract of sale of Helmsley-Spear's participation in the transaction was dispositive as to its entitlement to a commission. In opposing the motion, the Blood Center argued, *inter alia*, that Helmsley-Spear was not the procuring cause of the sale since it had introduced North Moore-Ericsson Owners, LLC as a prospective purchaser, whereas an allegedly different entity, North Moore, was the eventual purchaser.

The IAS Court denied the motion, finding that the difference in the name of the proposed purchaser (Ericsson versus North Moore) presented a factual issue as to the identity of the entity Widmaier had introduced to the Blood Center, thus placing in issue Helmsley-Spear's assertion that it was the procuring cause. It also found a factual issue as to whether the initial

round of negotiations with the original proposed purchaser, North Moore-Ericsson Owners, LLC, in which even the Blood Center admits that Helmsley-Spear represented the purchaser, had collapsed, leading to an agreement with North Moore on different terms. Since the language of the contract of sale constitutes an admission by the Blood Center that Helmsley-Spear was the procuring cause, there are no factual issues to warrant denial of the motion and, accordingly, we reverse.

Where a contract of sale admits the broker's performance of services, the broker is entitled to summary judgment on its claim for commissions. (*Holiday Mgt. Assocs. v Albanese*, 173 AD2d 775; *May Co. v Monaco Assocs.*, 80 AD2d 798.) The pertinent language in section 18 of the contract of sale is virtually identical to that held to constitute an admission in *May Co.* The Blood Center, somehow perceiving significance in the semantical difference, suggests that the clauses in these authorities use the words "the commission" or "all commissions", while the contract of sale in the instant matter uses the words "any commission". As is readily apparent from a reading of both cases, the terms have the same legal meaning, rendering the Blood Center liable for the agreed-to commission.

In *May Co.*, this Court granted summary judgment to the broker upon a brokerage clause in a contract of sale less favorable to the broker than is section 18 of the subject contract of sale. In relevant part, after reciting that May was the broker in connection with the sale of the premises, the clause provided, " 'Seller agrees to pay Broker all commissions as may become due and payable under a separate written agreement heretofore made by and between seller and said Broker' " (80 AD2d, *supra,* at 799). The Blood Center argues that the words "all commissions" create a definitive obligation, while section 18's use of "any commission" creates a conditional obligation. But this argument ignores the *May Co.* clause's phraseology: " 'Seller agrees to pay Broker all commissions as may become due' ", language far less definitive than that of section 18. As the *May Co.* decision notes, the seller and broker, unlike here, had never even entered into a separate brokerage agreement.

Moreover, in *Holiday Mgt.*, the Second Department granted summary judgment to the broker, citing the underlying sales contract's language, which, insofar as is pertinent, tracks, almost verbatim, that of section 18: " 'Seller agrees to pay broker any commission which may be due pursuant to separate agreement' " (173 AD2d, *supra,* at 776). Thus, contrary to its

argument, the "any commission" language does not diminish the force of the Blood Center's sales contract's admission that recognized Helmsley-Spear as the procuring cause and acknowledged its obligation to pay a commission. Furthermore, even if *Holiday Mgt.* had not decided the issue, the word "any", in the context used, has been held to mean "all". (*Matter of Singer [State Laundry Co.]*, 189 Misc 150, *affd* 273 App Div 755; *O'Connor v Wells*, 43 Misc 2d 1075, 1076 ["The word 'any' has been defined judicially to mean 'all' or 'every' and the use of the word imports no limitation"].) To ignore such precedent and require Helmsley-Spear, in the face of the general use of the language of section 18 in real estate contracts (a fact we judicially notice), to establish independently that it was the procuring cause would only foment further litigation in an area of commerce which, because of the competing interests involved, is fraught with the potential for controversy.

Seeking to avoid the clear terms of the contract of sale, the Blood Center submitted an affidavit from Wurmser, its chief financial officer, stating that the Center never believed that the contract rendered it liable to Helmsley-Spear for the payment of a commission. He also urged that Helmsley-Spear was not the procuring cause of the sale. These self-serving and speculative assertions represent nothing more than an effort, by parol, to controvert a contractual admission clear from the instrument itself. "Interpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument." (*Teitelbaum Holdings v Gold*, 48 NY2d 51, 56.) Thus, extrinsic evidence as to the interpretation of section 18 is irrelevant as are Wurmser's other assertions of a similar nature.

The Blood Center argues that section 18 was intended to operate solely as an indemnity to the purchaser in the event liability for the payment of a commission to Helmsley-Spear were ultimately established. This claim lacks merit. (*See, e.g., Ambrose Mar-Elia Co. v Dinstein*, 151 AD2d 416, *lv denied* 74 NY2d 615.) Only the second part of the section's next to last sentence—"Seller shall pay any brokerage commission in accordance with Seller's agreement with the Broker and shall indemnify and hold Purchaser harmless from any claim of the Broker for such commission"—addresses the subject of indemnification. Acceptance of this argument would require that the language of the balance of the section be ignored, thereby disregarding a cardinal rule of contract construction.

Courts should construe a contract so as to give meaning to all of its language and avoid an interpretation that effectively renders meaningless a part of the contract. (*Two Guys from Harrison v S.F.R. Realty Assocs.*, 63 NY2d 396, 403.) Reading the entirety of section 18 as an integrated provision, as we must, we find no inconsistency between the Blood Center's admission that Helmsley-Spear was the procuring cause and the Blood Center's promise of indemnity in the event a claim for brokerage commission were made against North Moore, the purchaser of the property.

We have examined the other points argued by the Blood Center and find that they are without merit. Thus, Helmsley-Spear is entitled to summary judgment on liability. It also entitled to the same relief on damages because the brokerage agreement sets the commission at a percentage of the $8,250,000 sales price. (*See, e.g., Ambrose Mar-Elia Co. v Dinstein*, 151 AD2d 416, *supra.*)

Accordingly, the order of the Supreme Court, New York County (Emily Goodman, J.), entered March 19, 1998, denying plaintiff's motion for summary judgment, should be reversed, on the law, with costs and disbursements, and the motion granted with respect to the first cause of action. The Clerk is directed to enter judgment in plaintiff's favor in the amount of $277,500 plus interest from May 28, 1997.

TOM, LERNER and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered March 19, 1998, reversed, on the law, with costs and disbursements, and plaintiff's motion for summary judgment seeking to recover commissions due under a brokerage agreement granted with respect to the first cause of action.