SUMMARY ORDER
The Defendants-Appellants appeal from the district court’s October 2007 order granting the Plaintiff-Appellee’s motion for an injunction requiring Defendants-Appellants to convey documents to Plaintiff-Appellee in accordance with the parties’ contract and denying Defendants-Appellants’ cross-motion for an order of rescission. The district court determined that the contract rider provision at issue in the case was neither ambiguous nor the product of a mutual mistake, and that the Plaintiff-Appellee would not be unjustly enriched if the rider provision were not rescinded. The relevant portion of the rider provided:
Seller is in the process of obtaining a subdivision of the property located at 333 S. Healey Avenue as per attached subdivision plan. At the time of closing herein, Purchaser shall execute a deed and all necessary transfer documents to convey Lot 60A to Seller herein. Said deed and transfer documents shall be held in escrow by the Seller’s attorney and will be duly recorded upon full approval of said subdivision. Seller shall have three (3) years from the closing of title to obtain subdivision approval---In the event the subdivision is not approved, the deed and transfer documents for the subdivision parcel shall be returned to Purchaser with no further action taken or required.
We assume the parties’ familiarity with the remaining facts and the proceedings in the district court.
The Defendants-Appellants argue that the rider provision is subject to rescission as the product of mutual mistake. Under New York law, a party seeking rescission based on mutual mistake must show that “the mistake in question is mutual, substantial, material and exists at the time the contract is entered.” Rodriguez v. Mower, 56 A.D.3d 857, 866 N.Y.S.2d 815, 817 (3d Dep’t 2008); see Sears v. Grand Lodge, 163 N.Y. 374, 378, 57 N.E. 618 (1900) (noting that it is not a mutual mistake of fact where the parties entered into an agreement based on uncertain or contingent events and the claim is based upon mistake as to the outcome of such an event). “The idea is that the agreement as expressed, in some material respect, does not represent the meeting of the minds of the parties.” Melia v. Riina, 204 A.D.2d 955, 612 N.Y.S.2d 506, 508 (3d Dep’t 1994) (internal quotation marks omitted). “A dis *602 trict court’s findings with respect to the expression of the contracting parties’ intent will not be disturbed unless they are clearly erroneous.” Healy v. Rich Products Corp., 981 F.2d 68, 73 (2d Cir.1992).
The Defendants-Appellants assert that the parties’ “erroneous belief’ regarding how long it would take for the seller to obtain approval of its proposed subdivision of the property constitutes a mutual mistake such that they were entitled to rescission in this case. We disagree. The record supports the conclusion that, in agreeing to the rider provision, the parties intended that the seller would have three years from the date of closing to obtain subdivision approval. The rider as written represents that intent. That the seller was unable to obtain the requisite approval within three years does not affect the parties’ intent as expressed by the rider provision. Indeed, any assumption that approval could be obtained within three years does not constitute a “mutual mistake” because the parties made express provision for what was to happen in the event that approval was not obtained within that period.
We reject Defendants-Appellants’ argument that the phrase “[i]n the event the subdivision is not approved” in the final sentence of the provision is ambiguous because it could refer either to the date on which the three-year period of time expires or to the future date on which the application for the subdivision is actually denied. We review de novo a district court’s determination of whether a contract is ambiguous. See Tourangeau v. Uniroyal, Inc., 101 F.3d 300, 306 (2d Cir.1996).
[I]n deciding whether an agreement is ambiguous[,] courts should examine the entire contract and consider the relation of the parties and the circumstances under which it is executed. Particular words should be considered, not as if isolated from the context, but in light of the obligation as a whole and the intention of the parties as manifested thereby-
Kass v. Kass, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998) (internal quotation marks omitted). “Courts should construe a contract so as to give meaning to all of its language and avoid an interpretation that effectively renders meaningless a part of the contract.” Helmsley-Spear, Inc. v. New York Blood Center, Inc., 257 A.D.2d 64, 687 N.Y.S.2d 353, 357 (1st Dep’t 1999).
In isolation, the phrase “[i]n the event the subdivision is not approved” could be interpreted to refer to the date on which the seller’s application for the subdivision is actually denied. That phrase, however, must be considered in the context of the entire rider provision, which, several sentences earlier, provides that the seller has three years from the date of closing to obtain the required approval. Considered as a whole, the rider provision expresses the clear intent of the parties that the seller must obtain approval for the subdivision within three years after the date of the closing of title to the property in order for the return-of-documents obligation not to become applicable. In that context, the meaning of “[i]n the event the subdivision is not approved” is clear. It refers to the three-year period agreed upon by the parties, and provides that the seller will return the deed and transfer papers to the buyer if the seller fails to obtain the approval within that time period. Indeed, since nothing in the contract or the rider requires the seller to seek subdivision approval (rather than simply recognizing that the seller was “in the process of’ seeking to subdivide), if “not approved” in the “[i]n the event the subdivision is not approved” phrase were read to mean “actually denied,” as contended by Defendants-Appellants, it would allow them to keep the conditionally-deeded property in perpetu *603 ity by simply doing nothing. Interpreting the phrase to refer to any event other than the expiration of the three-year period of time would render meaningless the portion of the provision that gave the seller three years to obtain approval.
Finally, the Defendants-Appellants argue that absent rescission of the rider provision, the Plaintiff-Appellee will be unjustly enriched because it would hold title to property worth much more than the amount the Plaintiff-Appellee paid to the seller. This claim, however, is precluded by the existence of the contract between the parties. “The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.” Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005); see also Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) (“The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.”). Because the subject matter of the dispute — whether the seller was obligated to return the deed and transfer papers to the Plaintiff-Appellee— is governed by the rider provision, the Defendants-Appellants cannot prevail on their claim for unjust enrichment.
For the foregoing reasons, we AFFIRM the judgment of the District Court.