■ Siegel Consultants, Ltd., Appellant, v Nokia, Inc., et al., Respondents. 5 LLC, Third-Party Plaintiff-Appellant, v Friedland Realty, Inc., et al., Third-Party Defendants-Respondents-Respondents. [926 NYS2d 82]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered August 12, 2010, which, insofar as appealed from, denied plaintiff Siegel Consultants, Ltd.'s motion for partial summary judgment on the issue of liability as against defendant 5 LLC, granted defendant Nokia, Inc.'s cross motion for summary judgment dismissing the complaint as against it, and granted the motion of third-party defendants Friedland Realty, Inc. and Gene Meer to dismiss the third-party complaint to the extent of dismissing the complaint in its entirety against Meer and dismissing the third-party causes of action against Friedland for breach of a contractual obligation to pay commissions, fraud, breach of fiduciary duty, breach of loyalty, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and contribution, unanimously modified, on the law, to grant summary judgment to 5 LLC to dismiss Siegel's complaint in its entirety, and to dismiss 5 LLC's third-party complaint against Friedland Realty, Inc., and otherwise affirmed, without costs.

This action arises out of a dispute concerning a real estate broker's commission for the rental of premises located in Manhattan. Nokia first became aware of the subject property owned by 5 LLC in January 2005, when one of its employees, Jeremy Wright, was in New York City to scout out possible spaces for a new flagship store. Wright, in an affidavit, states that he observed a sign in the window of the subject property and notified Andrew Bathurst, Nokia's real estate consultant. Bathurst then contacted Ronald Austin, a real estate agent, who in turn contacted Siegel for its consulting services. 5 LLC contends that it arranged for Nokia to view the property on January 19, 2005, and that Siegel did not attend this meeting. According to 5 LLC, it had no communication or interaction with anyone from Siegel.

Siegel, however, contends that it was contacted by Austin, who was acting as an agent for Nokia, to find a suitable retail space in Manhattan. Siegel further states that it proposed the subject space and that it arranged, with 5 LLC's permission and consent, to show Nokia the space. On February 9, 2005, Siegel claims it sent 5 LLC an offer to lease the subject property. However, 5 LLC contends it never received this offer because Siegel, in fact, sent it to NAI Friedland Realty (Friedland), 5 LLC's exclusive agent.

In February 2005, Siegel contacted 5 LLC and Nokia claiming it was entitled to compensation for its work on the lease. Both 5 LLC and Nokia took the position that they were not obligated to pay any commission to Siegel. Neither 5 LLC nor Nokia had a broker agreement, or any written employment agreement, with Siegel regarding the subject property.

In July 2005, 5 LLC, as landlord, and Nokia, as tenant, signed a lease for the retail space. Paragraph 40 of the lease states that 5 LLC will pay "any and all commissions due NAI Friedland Realty, Inc. and Siegel Consultants, Ltd. pursuant to separate agreement or otherwise" and that 5 LLC promises to indemnify, defend and hold Nokia harmless from and against any claims made by Friedland or Siegel, for commissions or other payments allegedly due.

According to 5 LLC and Nokia, this provision was included exclusively for the benefit of the parties to the contract, and was not an acknowledgment that any specific broker was entitled to a commission. 5 LLC and Nokia further contend that Siegel was named in the lease because Siegel had contacted both parties several times demanding a commission, and the parties wanted to insulate themselves from possible liability. Notably, in subsequent communications between Siegel and Nokia's general counsel, Siegel admitted that it was not a party to any written broker or employment agreement with Nokia, and that Nokia was not responsible for paying a broker commission because the commission is customarily paid by the owner and not the tenant.

Siegel commenced this breach of contract action alleging it was instrumental in effectuating a lease agreement between 5 LLC and Nokia and thus it was entitled to a full commission. Siegel moved for summary judgment as to its liability claim against 5 LLC, and Nokia cross-moved for summary judgment dismissing the complaint as against it. Third-party defendants Meer and Friedland also moved for an order dismissing 5 LLC's third-party complaint that asserted eight causes of action, including breach of contract for failure to hold harmless, defend and indemnify 5 LLC.

The motion court properly granted Nokia's cross motion for summary judgment dismissing the complaint as against it. The facts do not establish that Nokia retained Siegel as its broker. Indeed, both Nokia and Siegel agree that Siegel was contacted by Austin for its consulting services. There is no written brokerage agreement, retainer, or any other written employment agreement between Nokia and Siegel. Further, Siegel acknowledged that Nokia had no duty to pay a commission because Nokia was the tenant and not the landlord.

After searching the record, we find that summary judgment should be granted to 5 LLC, dismissing Siegel's complaint against it in its entirety. "A court entertaining a motion for summary judgment may search the record and, if appropriate, grant summary judgment to the nonmoving party on any re-

lated claim, and this prerogative may be exercised even on appeal" (*Carnegie Hall Corp. v City Univ. of N.Y.*, 286 AD2d 214, 215 [2001]). 5 LLC did not have any written or verbal agreement with Siegel. In fact, Siegel did not provide any evidence showing that it communicated with or had dealings with 5 LLC.

Siegel relies on the fact that it is referenced as a broker in the lease between 5 LLC and Nokia and alleges that 5 LLC breached this agreement to pay Siegel a commission. However, Siegel is unable to point to any agreement between 5 LLC and Siegel that could have possibly been breached. Unlike in *Helmsley-Spear, Inc. v New York Blood Ctr.* (257 AD2d 64 [1999]), the lease here did not include a provision constituting a clear admission by 5 LLC that Siegel rendered services with respect to the transaction that entitled it to a commission payment (*see Joseph P. Day Realty Corp. v Chera*, 308 AD2d 148 [2003]). Indeed, 5 LLC included the indemnity provision and brokerage statement in the lease to protect the parties to the lease. It did not reference Siegel in the lease in an effort to obligate itself to pay Siegel a commission.

Dismissal of the third-party complaint as against Meer was appropriate as 5 LLC "failed to allege particularized facts to warrant piercing the corporate veil" (*Andejo Corp. v South St. Seaport Ltd. Partnership*, 40 AD3d 407, 407 [2007]). The court also properly dismissed the remaining claims against Friedland, which are duplicative of the claim for breach of the contractual obligation to defend, indemnify and hold 5 LLC harmless. In light of our decision to dismiss Siegel's claim against 5 LLC, the third-party claim for indemnification also is dismissed. Concur—Saxe, J.P., Friedman, Freedman and Richter, JJ.