**Benchmark Plus Inst. Partners, L.L.C. v Sacchetti**

2025 NY Slip Op 32089(U)

June 10, 2025

Supreme Court, New York County

Docket Number: Index No. 655662/2024

Judge: Anar Rathod Patel

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 45

-------------------------------------------------------------------------X

BENCHMARK PLUS INSTITUTIONAL
PARTNERS, L.L.C., BENCHMARK PLUS
PARTNERS, L.L.C.,

|  |  |
|---|---|
| **INDEX NO.** | 655662/2024 |

Plaintiffs,

|  |  |
|---|---|
| **MOTION DATE** | 03/28/2025 |

- v -

DARIO SACCHETTI, JONATHAN HOWARD,
TAAVI DAVIES, ARTHUR DZAGHGOUNI,
ANAVIO EQUITY CAPITAL MARKETS FUND GP
LIMITED, ANAVIO CAPITAL PARTNERS LLP,
ANAVIO EQUITY CAPITAL MARKETS FUND LP

|  |  |
|---|---|
| **MOTION SEQ. NO.** | 007 |

**DECISION + ORDER ON MOTION**

Defendants.

-------------------------------------------------------------------------X

**HON. ANAR RATHOD PATEL**:

The following e-filed documents, listed by NYSCEF document number (Motion 007) 124–130, 135–140, 151 were read on this motion to/for <u>DISMISS</u>.

### Relevant Factual[1] and Procedural History

The Court incorporates, by reference, the factual and procedural summary and defined terms from its Decision and Order on Motion Sequence Number 004.  NYSCEF Doc. No. 131 (4/24/25 D&O).[2]  This case arises from Plaintiffs' investment in the Delaware Fund, which resulted from the Delaware Fund's investment in COPL.

Defendant Taavi Davies ("Davies") was a director of the Fund GP and the Master Fund until at least November 7, 2023, and is a resident of Luxembourg.  NYSCEF Doc. No. 2 at ¶ 17. Defendant Arthur Dzaghghouni ("Dzaghghouni", together with Davies, the "Directors") was a director of the Fund GP and the Master Fund until at least December 31, 2023, and is a resident of the Cayman Islands.  *Id.* at ¶ 18.  The Fund GP is organized under the laws of the Cayman Islands with its registered office address in the Cayman Islands.  *Id.* at ¶ 16.  The Delaware Fund is a limited partnership registered in Delaware with its registered office address in Delaware.  *Id.* at

---

[1] The facts are taken from the Amended Complaint and the exhibits thereto and are accepted as true for purposes of this Motion.  Plaintiffs filed the Complaint unsealed and unredacted, and the Amended Complaint in redacted form. Accordingly, any citation to the Complaint mirrors the Amended Complaint.

[2] Defendants Sacchetti, Howard, the Fund GP, the Manager, and Nominal Defendant the Delaware Fund moved to dismiss the Amended Complaint in its entirety with prejudice, NYSCEF Doc. No. 69;  this Court denied the motion.

**655662/2024   BENCHMARK PLUS INSTITUTIONAL PARTNERS, L.L.C. ET AL vs. SACCHETTI, DARIO ET AL**
**Motion No.  007**

Page 1 of 10

1 of 10

¶ 15.  Plaintiffs allege claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and fraud against the Directors.  *Id.* at ¶¶ 205–49.

Plaintiffs' allegations stem from the Directors': (1) respective roles and responsibilities vis-a-vis the General Partner; and (2) inclusion on the Valuation Committee as two of the three members.

### I.     Allegations as Directors of the Fund GP

Defendants Davies and Dzaghgouni were the sole directors of the Fund GP, which otherwise had no other managers nor employees.  *Id.* at ¶¶ 17–18; NYSCEF Doc. No. 74 at 3, 9, 41 (Private Placement Memorandum ("PPM")).  Pursuant to the PPM, the Fund GP was ultimately responsible for managing and operating the Delaware Fund and the Master Fund as well as "the investment decisions made on behalf of the Master Fund."  *Id.* at ¶¶ 161, 212.  "[T]he [Fund GP] knew that Anavio had used the Funds' investment money to acquire enormous positions in COPL that violated Anavio's risk policies… [and] likewise knew that Anavio's over concentration in COPL… violated its investment strategy and objectives and was not an appropriate investment…."  *Id.* at ¶¶ 163–64.  As the sole employees and directors of the Fund GP, Plaintiffs allege that the Directors were uniquely responsible for the actions or inactions of the Fund GP in allowing extensive investment in COPL and failing to correct investments that did not comply with the risk policy.

Pursuant to the LPA, the Fund GP acted as the General Partner while Plaintiffs acted as Limited Partners.  *Id.* at ¶ 75.  "On behalf of the General Partner,  Defendants Davies and Dzaghgouni had express responsibility for approving Anavio's risk policies, monitoring Anavio's adherence to its policies and guidelines and appropriate standards of risk management, ensuring that risk policies continued to be appropriate, and rectifying breaches of the risk policy."  *Id.* at ¶ 59–60.  Defendants reiterated in their DDQ responses to Plaintiffs, that the Directors: (1) "'remain[] responsible for approving the Fund's Risk Policy and Risk Framework and for ensuring that it continues to be appropriate for the Fund;'"  and (2) were "'responsible for monitoring that service providers (Including [Anavio]) adhere to the policy and appropriate standards of risk management.'" *Id.* at ¶ 224.

Nonetheless, the Fund GP "failed to take any action to cause Anavio to divest from COPL or abide by its own risk policies…."  *Id.* at ¶ 165.  Further, the Directors, in their individual capacities, did not communicate to Plaintiffs the accurate COPL position and went so far as to approve the inaccurate financial reporting to Plaintiffs, thereby concealing the Delaware Fund's COPL position.  *Id.* at ¶¶ 166–67, 215–17, 225; NYSCEF Doc. No. 138 at § 14.

### II.     Allegations as Members of the Valuation Committee

Plaintiffs also allege that, as members of the Valuation Committee, the Directors participated in Defendants' disputed actions.  Defendant Anavio created the Valuation Committee comprised of Defendant Howard and the Directors.  *Id.* at ¶ 146.  "The Valuation Committee was responsible for overseeing adherence to valuation policy and was responsible for resolving any valuation issues."  *Id.*  These valuations were used to calculate Anavio's management and incentive fees.  *Id.* at ¶ 144.

**655662/2024   BENCHMARK PLUS INSTITUTIONAL PARTNERS, L.L.C. ET AL vs. SACCHETTI,**                    **Page 2 of 10**
**DARIO ET AL**
**Motion No.  007**

2 of 10

[* 2]

From mid-2022 to March 2024, COPL's securities made up the majority of the Master Fund's NAV. *Id.* at ¶ 147. Despite COPL's financial distress, and its poorly performing stock price, the Valuation Committee valued the COPL securities "far in excess of their cost." *Id.* at ¶ 148. At the end of 2022, Defendants claimed that the Master Fund "had $25.6 million in unrealized gains…largely relating to the COPL securities." *Id.* Anavio thus valued COPL securities at more than 267% of their cost. *Id.*

After COPL filed for bankruptcy, Anavio was obligated to write down the Master Fund's NAV by $47 million, "much of which was supposed unrealized 'gains' on COPL." *Id.* at ¶ 149. However, prior to COPL's bankruptcy, Anavio paid itself $2.3 million in incentive fees based on unrealized profits from COPL trades in 2022 and $875,000 in management fees in 2022 and 2023 based on the same unrealized COPL profits. *Id.* at ¶ 150. No material profits linked to Anavio's COPL trades were ever realized. *Id.* at ¶ 151. The Defendants "intentionally overvalued the COPL securities to create a false impression that the Funds were performing well and to pay Anavio hefty management and incentive fees." *Id.*; *see also* NYSCEF Doc. No. 138.

Plaintiffs allege that the Fund GP and, accordingly, the Directors (collectively "GP Defendants") "either knew that Anavio had abandoned all of its stated risk policies and investment objectives or were recklessly indifferent to the same." *Id.* at ¶ 217. The GP Defendants "(a) knew the truth about the COPL trades and the Funds' true COPL positions; (b) knew that those trades and positions violated all of Anavio's risk policies; (c) knew that the COPL valuations presented in Anavio's financial reporting (including year-end 2022 financial statements) were baseless; and (c) decided not to disclose to Benchmark the true information about the COPL trades, positions, value, and Anavio's abandonment of its risk policies." *Id.*; *see also* NYSCEF Doc. No. 138 at § 14.

On October 25, 2024, Plaintiff commenced the present action by filing the Summons and Complaint. NYSCEF Doc. Nos. 1–2. The Complaint alleges four causes of action: (1) breach of contract against Anavio and the Fund GP; (2) fraud and intentional misrepresentation against all defendants; (3) breach of fiduciary duty against all defendants; and (4) aiding and abetting breaches of fiduciary duty against all defendants. *Id.* at ¶¶ 182–249.

On March 28, 2025, the Directors moved to dismiss the Amended Complaint as the counts alleged against them with prejudice. NYSCEF Doc. No. 124–130. On April 28, 2025, Plaintiffs filed its opposition to the Directors' Motion. NYSCEF Doc. Nos. 135–140. The Directors filed their reply on May 13, 2025. NYSCEF Doc. No. 151.

## Legal Analysis

The Directors seek to dismiss the Complaint for: (1) lack of personal jurisdiction; and (2) failure to state a claim. NYSCEF Doc. No. 125. The relevant documents designate Delaware law as applicable to the underlying agreement. NYSCEF Doc. Nos. 75–76. "Choice of law provisions apply to substantive issues, and matters of procedure are governed by the law of the forum state." *FIA Leveraged Fund Ltd. v. Grant Thornton LLP*, 150 A.D.3d 492, 496 (1st Dept. 2017) Accordingly, the Court analyzes the Directors' arguments relating to personal jurisdiction pursuant to New York law; while the Directors' arguments regarding failure to state a claim are analyzed pursuant to Delaware law.

655662/2024 BENCHMARK PLUS INSTITUTIONAL PARTNERS, L.L.C. ET AL vs. SACCHETTI, DARIO ET AL
Motion No. 007

Page 3 of 10

[* 3]

3 of 10

## I.    *Personal Jurisdiction*

CPLR § 3211(a)(8) states, in relevant part, "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that… (8) the court has not jurisdiction of the person of the defendant …." "[W]e have explained that the 'constitutional predicates of personal jurisdiction' contain two components.  The first 'component involves service of process, which implicates due process requirements of notice and opportunity to be heard.  The other component of personal jurisdiction involves the power, or reach, of a court over a party, so as to enforce judicial decrees.'" *Aybar v. Aybar*, 177 N.E.3d 1257, 1264 (N.Y. 2021) (quoting *Keane v. Kamin*, 723 N.E.2d 553 (N.Y. 1999)).  "To satisfy the jurisdictional basis there must be a constitutionally adequate connection between the defendant, the State and the action." *Keane*, 723 N.E.2d at 555.

In its previous Decision and Order, the Court held that the Forum Selection Clause of the LPA unambiguously designated New York as the forum for "any proceedings arising out of the terms and conditions of this Agreement."  NYSCEF Doc. No. 131 at § I.A.  The Court further held that the Side Letter acted as an amendment to the LPA and did not supersede the mandatory Forum Selection Clause. *Id.*  Finally, the Court held that Defendants Howard and Sacchetti, were either closely-related and/or intended third party beneficiaries. *Id.* at §§ 1.B–1.C.  Accordingly, the Court held that: (1) the Forum Selection Clause of the LPA was binding on the Anavio corporate entities; and (2) that Defendants Howard and Sacchetti were sufficiently closely-related to be subject to personal jurisdiction in this matter. *Id.* at § 1.

Here, the Directors argue that the Court does not have personal jurisdiction over Defendants Davies and Dzaghgouni as: (1) they did not sign the LPA and Side Letter in their individual capacities; and (2) they are not closely-related to the General Partner, the signatory, as they are Independent Directors of the Defendant entities and were not involved in the alleged scheme.

"It is a general principle that only the parties to a contract are bound by its terms.  A non-signatory may be bound by a contract under certain limited circumstances, including as a third-party beneficiary or an alter ego of a signatory or where it is a party to another related agreement that forms part of the same transaction." *Highland Crusader Offshore Partners, L.P. v. Targeted Delivery Techs. Holdings, Ltd.*, 184 A.D.3d 116, 121–22 (1st Dept. 2020) (internal citations omitted).  When extending the terms of a contract to confer personal jurisdiction upon a non-signatory, "[t]he relationship between the nonparty and the signatory in such cases must be sufficiently close so that enforcement of the clause is foreseeable by virtue of the relationship between them." *Freeford Ltd. V. Pendleton*, 53 A.D.3d 32, 39 (1st Dept. 2008).  Further, a contract containing a forum selection clause and defining the bound parties to include related entities should be upheld by the Court. *Oberon Sec., LLC v. Titanic Ent. Holdings LLC*, 153 N.Y.S.3d 838 (1st Dept. 2021) (holding that a forum selection clause which defined the bound parties to include defendant's "affiliates, subsidiaries, and subsequently formed entities," was sufficient to confer jurisdiction on defendant's related corporate entities).

However, "[j]urisdiction over individual defendants employed by a non-domiciliary corporation is appropriate under Section 302(a)(1) where the out-of-state corporate officers were

**655662/2024  BENCHMARK PLUS INSTITUTIONAL PARTNERS, L.L.C. ET AL vs. SACCHETTI, DARIO ET AL**
Motion No.  007

**Page 4 of 10**

4 of 10

primary actors in the transactions in New York that gave rise to the litigation, and not merely some corporate employee[s] who ... played no part in it." *Sea Tow Services Int'l., Inc. v. Pontin*, 472 F.Supp.2d 349, 361 (E.D.N.Y. 2007) (internal quotations and citations omitted).[3] Further, "[i]f the nonsignatory party has an ownership interest or a direct or indirect controlling interest in the signing party or, the entities or individuals consulted with each other regarding decisions and were intimately involved in the decision-making process then, a finding of personal jurisdiction based on a forum selection clause may be proper, as it achieves the 'rationale behind binding closely related entities to the forum selection clause [which] is to 'promote stable and dependable trade relations.'"" *Universal Inv. Advisory SA v. Bakrie Telecom PTE, Ltd.*, 62 N.Y.S.3d 1, 8 (1st Dept. 2017) (internal citations omitted).

### A. Personal Jurisdiction as Directors of Fund GP

The Complaint alleges that the Fund GP acted as the General Partner and had: (1) control over; and (2) the responsibility to monitor the assets of the Delaware Fund. NYSCEF Doc. No. 2 at ¶ 161, 163–64, 224. Plaintiffs further allege that the Fund GP was ultimately responsible for managing and operating the Delaware Fund, the Master Fund as well as "the investment decisions made on behalf of the Master Fund." *Id.* at ¶¶ 161, 212. Plaintiffs allege that Defendants Davies and Dzaghgouni were the sole Directors of the Fund GP. *Id.* at ¶ 17–18. Defendants reassured Plaintiffs, that: (1) the Directors "'remain[] responsible for approving the [Delaware] Fund's Risk Policy and Risk Framework and for ensuring that it continues to be appropriate for the [Delaware] Fund;'" and (2) the Directors were "'responsible for monitoring that service providers (Including [Anavio]) adhere to the policy and appropriate standards of risk management.'" *Id.* at 224. Furthermore, Plaintiffs' filings manifest that the Directors reviewed and approved the financial statements provided to Plaintiffs, which allegedly contained the relevant misrepresentations. NYSCEF Doc. No. 138 at § 14. Based on these allegations, Defendants Davies and Dzaghgouni were directly involved in the Defendants' disputed actions and/or had control of the assets of the Defendants. Accordingly, the Court can assert personal jurisdiction over the Defendants Davies and Dzaghgouni as the sole directors of Defendant Fund GP.

### B. Personal Jurisdiction as Members of Valuation Committee

Furthermore, Plaintiffs allege that the Directors represented two-thirds of the Valuation Committee. *Id.* at ¶ 146. The Directors do not dispute their involvement as members of the Valuation Committee. NYSCEF Doc. Nos. 129–30. The Valuation Committee was "responsible for overseeing adherence to valuation policy and for resolving any valuation issues." NYSCEF Doc. No. 2 at ¶ 146. Over the course of the parties' partnership, the Valuation Committee allowed for continued trading of the COPL investment and overvalued the same, resulting in increased management fees paid out to the Defendants. *Id.* at ¶¶ 143–51. Furthermore, Plaintiffs allege that

---

[3] Based on this citation, the Directors argue that, to confer personal jurisdiction, their actions must have occurred in New York. NYSCEF Doc. No. 135 at 8. However, in *Sea Tow Services Int'l*, the Court found that the defendant was subject to personal jurisdiction in New York where the defendant was not within the state but had entered into a contract containing a New York choice-of-law provision. 472 F. Supp2d at 359; *see also Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 23 (2d Cir. 2004)("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law."). Thus, it is irrelevant whether the Directors actions occurred in New York.

**655662/2024 BENCHMARK PLUS INSTITUTIONAL PARTNERS, L.L.C. ET AL vs. SACCHETTI, DARIO ET AL** **Page 5 of 10**
**Motion No. 007**

5 of 10

inaccurate financial reports provided by Defendants to Plaintiffs, with inaccurate overvaluation of COPL, were endorsed by the Directors. NYSCEF Doc. No. 138 at § 14 "Defendants Davies and Dzaghgouni protected and supported those fees for Anavio, while knowing that COPL was dramatically overvalued. Had they fulfilled their obligations and required Anavio to abide by its risk policies, it would have earned far less in fees." NYSCEF Doc. No. 2 at ¶ 233.

Taking these allegations in the light most favorable to the non-moving party, Plaintiffs have established that the Directors likely consulted with the other Defendants regarding decisions surrounding the COPL investments and their valuation, and were involved in the decision-making process. Accordingly, the Directors are similarly bound by the forum selection clause of the LPA as they are closely-related to the General Partner.[4]

## II. Failure to State a Claim

On a motion to dismiss brought pursuant to CPLR § 3211(a)(7), "pleadings are to be afforded a liberal construction, allegations are taken as true, the plaintiff is afforded every possible inference, and a determination is made only as to whether the facts as alleged fit within any cognizable legal theory." *CSC Holdings, LLC v. Samsung Elecs. Am., Inc.*, 146 N.Y.S.3d 17, 18 (2021) (internal citations omitted). Nevertheless, "[d]ismissal of the complaint is warranted if the [movant] fails to assert facts in support of an element of the claim, or if the factual allegations and inferences drawn from them do not allow for an enforceable right of recovery." *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1162 (N.Y. 2017) (internal citations omitted). The test is "whether the proponent of the pleading has a cause of action, not whether he has stated one." *Leon v. Martinez*, 84 N.Y.2d 83, 87–88 (1994). Courts will grant a motion to dismiss where the plaintiff states a cognizable cause of action but fails to assert a material fact necessary to meet an element of the claim. *See, e.g., Arnon Ltd v. Beierwaltes*, 3 N.Y.S.3d 31, 33 (1st Dept. 2015).

### A. Breach of Fiduciary Duty

"The equitable tort for breach of fiduciary duty has only two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty." *Basho Techs. Holdco B, Ltd. Liab. Co. v. Georgetown Basho Inv'rs, Ltd. Liab. Co.*, 2018 Del. Ch. LEXIS 222, at *55 (Del. Ch. July 6, 2018). The Directors argue that they did not owe a fiduciary duty to the Plaintiff as the Independent Directors of Fund GP because Plaintiffs do not allege that: (1) the Directors had control over the General Partner; and (2) the Directors engaged in self-dealing.

"It is well settled that, unless limited by the limited partnership agreement, the general partner of a Delaware limited partnership and the directors of a corporate General Partner who control the partnership, like the directors of a Delaware corporation, have the fiduciary duty to manage the partnership in the partnership's interests and the interests of the limited partners." *In re Boston Celtics Ltd. Partn. Shareholders Litig.*, 1999 WL 641902, at *4 (Del. Ch. Aug. 6, 1999). "While the contours of the fiduciary obligations have been debated, it is well established that, at a

---

[4] Plaintiffs also argue that the Directors were intended third-party beneficiaries; however, Plaintiffs solely rely on indemnification provisions which are insufficient to confer benefit. *See Commr. of Dept. of Soc. Services of City of New York v. New York-Presbyterian Hosp.*, 82 N.Y.S.3d 390 (1st Dept. 2018); *Siegel Consultants, Ltd. v. Nokia, Inc.*, 926 N.Y.S.2d 82 (1st Dept. 2011).

**655662/2024  BENCHMARK PLUS INSTITUTIONAL PARTNERS, L.L.C. ET AL vs. SACCHETTI,** **Page 6 of 10**
**DARIO ET AL**
**Motion No. 007**

6 of 10

minimum, the individuals and entities that own and control the general partner owe the limited partners 'the duty not to use control over the partnership's property to advantage the corporate director at the expense of the partnership.'" *Fannin v. UMTH Land Dev., L.P.*, 2020 WL 4384230, at \*18 (Del. Ch. July 31, 2020)

As discussed, *supra*, Plaintiffs allege that: (1) the Directors were two of the three members of the Valuation Committee created by Defendant Anavio; and (2) the Valuation Committee was tasked with overseeing the General Partner's adherence to the valuation policy. NYSCEF Doc. No. 2 at ¶¶ 143–51. Further, Plaintiffs repeatedly allege that the Directors, as the sole employees of the General Partner, knew the amount invested in COPL, that the financial reports provided to the Plaintiffs were inaccurate, and that these investments violated the espoused risk policy. *Id.* at ¶¶ 167, 215, 232, 248. Plaintiffs also allege that the Directors were responsible for authorizing investment decisions while considering the decisions' compliance with the established risk policy. *Id.* at ¶¶ 59–60, 224–25.[5]

The Directors argue that Plaintiffs' allegations fail as Plaintiffs only allege that the Directors had the ability to control the partnership's assets, not actual control over the partnership's assets. NYSCEF Doc. No. 151 at 14. However, the Director's argument in this regard betrays common sense. Plaintiffs allege that the Fund GP was responsible for managing and operating the Delaware Fund and the Master Fund as well as "the investment decisions made on behalf of the Master Fund." *Id.* at ¶¶ 161, 212. The Fund GP had no employees and had only two directors, Defendants Davies and Dzaghgouni. *Id.* at ¶¶ 17–18; NYSCEF Doc. No. 74 at 3, 9, 41. The Directors were tasked with approving and adhering to risk policies. *Id.* at ¶ 224. Absent an ability to control the investments, the Directors' roles within the Fund GP would be inconsequential. Accordingly, it is reasonably conceivable that the Directors had actual authority to take actions concerning the COPL trades at issue here.

The Directors also argue that *USACafes* and its progeny does not impose a fiduciary duty on the Directors, but rather a duty of loyalty which was not breached. NYSCEF Doc. No. 151 at 14–15 ("Under Delaware's well-established doctrine pertaining to directors of general partners, the Independent Director Defendants at most owed Plaintiffs a duty not to engage in self-dealing— and Plaintiffs have not alleged that they engaged in any self-dealing."). "In practice, the cases applying *USACafes* have not ventured beyond the clear application stated in *USACafes:* 'the duty not to use control over the partnership's property to advantage the corporate director at the expense of the partnership.'" *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at \*10 (Del. Ch. Apr. 20, 2009). Even assuming, *arguendo*, that the Directors only owed a duty of loyalty, the Complaint sufficiently alleges a breach of said duty. As the sole employees of Defendant Fund GP, and a majority of the Valuation Committee, the Directors were responsible for accurately valuing and reporting the valuation of the partnership's assets. NYSCEF Doc. No 2 at ¶ 146. Plaintiffs allege that the Defendants overvalued the COPL investment by 267%, garnering $2.3 million in incentive fees and $875,000 in management fees in 2022 and 2023. *Id.*

---

[5] While these operative facts serve as the basis for multiple causes of action in the complaint, the "court is not required to wrestle at the pleading stage with how one claim might interact with another. 'Not all disputes can or should be resolved at the pleading stage.'" *Garfield v. Allen*, 277 A.3d 296, 361 (Del. Ch. 2022) (internal citations omitted).

at ¶¶ 148, 150.  As such, it can be reasonably inferred that the Directors benefited from their actions or inactions at the expense of the limited partners.

### B. Aiding and Abetting Breach of Fiduciary Duty

The Directors next argue that the cause of action for aiding and abetting breach of fiduciary duty fails for Plaintiffs' failure to plead: (1) an underlying breach of a fiduciary duty; and (2) knowing participation by the Directors.  NYSCEF Doc. No. 125 at 21–23.  The Directors' first argument has been rendered academic.

> Under Delaware law, a valid claim for aiding and abetting a breach of fiduciary duty requires: (1) the existence of a fiduciary relationship; (2) the fiduciary breached its duty; (3) a defendant, who is not a fiduciary, knowingly participated in a breach; and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary.

*Globis Partners, L.P. v. Plumtree Software, Inc.*, 2007 WL 4292024, at \*15 (Del. Ch. Nov. 30, 2007).  This Court has previously held that the remaining defendants owed a fiduciary duty to the Plaintiff and breached the same.  NYSCEF Doc. No. 131 at § 2.C.  Accordingly, the Directors' first argument is moot.

The Court now turns to the Directors' second argument.  "To withstand a motion to dismiss, a plaintiff must plead facts making it reasonably conceivable that the defendant knowingly supported a breach of duty *and* that his resulting assistance to the primary actor constituted substantial assistance in causing the breach."  *In re Oracle Corp. Derivative Litig.*, 2020 Del. Ch. LEXIS 218, \*33 (Del. Ch. June 22, 2020).  "[T]o survive a [motion to dismiss,] the Complaint must either allege facts establishing either that [the defendants] conspired to breach a fiduciary duty, or must otherwise contain 'some factual allegations from which knowing participation can be inferred.'"  *McGowan v. Ferro*, 2002 WL 77712, at \*2 (Del. Ch. Jan. 11, 2002).  Again, the Directors represented a majority of the Valuation Committee, created to oversee adherence to valuation policy and to resolve any valuation issues which were used to calculate the fees received by the Defendants.  NYSCEF Doc. No. 2 at ¶¶ 143–51.  Meanwhile, as Directors, they were tasked with "'approving the Fund's Risk Policy and Risk Framework and for ensuring that it continues to be appropriate for the Fund;'" and "'monitoring that service providers (Including [Anavio]) adhere to the policy and appropriate standards of risk management.'" *Id.* at 224.  Nonetheless, after COPL went bankrupt, the Valuation Committee was forced to write down the Master Fund's NAV by $47 million.  *Id.* at ¶ 149.  As such, Plaintiffs allege that the Directors knew the amount invested in COPL and, despite knowing that these investments did not adhere to the risk policy, approved, or failed to prevent them.  *Id.* at ¶¶ 165, 215, 224–25, 248.  Furthermore, the Directors knew the financial reports provided to the Plaintiffs were inaccurate and that the COPL investments were overvalued.  *Id.* at ¶¶ 167, 232–33.

Based on these allegations, it is reasonably conceivable that the Directors knowingly supported the remaining Defendants' breach of fiduciary duties.  Thus, the Directors' argument in this regard is unconvincing.

## C. Fraud

Finally, the Directors argue that Plaintiffs failed to sufficiently allege common law fraud because Plaintiffs did not allege that the Directors: (1) knowingly made misrepresentations of fact; or (2) failed to disclose a material misrepresentation when otherwise under a duty to correct. NYSCEF Doc. No. 151 at 17–19.

> Common law fraud in Delaware requires: 1) the existence of a false representation, usually one of fact, made by the defendant; 2) the defendant had knowledge or belief that the representation was false, or made the representation with requisite indifference to the truth; 3) the defendant had the intent to induce the plaintiff to act or refrain from acting; 4) the plaintiff acted or did not act in justifiable reliance on the representation; and 5) the plaintiff suffered damages as a result of such reliance. In addition to overt representations, fraud may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak.

*H-M Wexford LLC v. Encorp, Inc*., 832 A.2d 129, 144 (Del. Ch. 2003). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Del. Ch. Ct. R. 9(b). "Under Delaware law, *scienter* can be proven by establishing that the defendant acted with knowledge of the falsity of a statement or with reckless indifference to its truth." *In re Wayport, Inc. Litig.*, 76 A.3d 296, 326 (Del. Ch. 2013). "While knowledge may be pled generally, when a plaintiff pleads a claim of fraud that charges that the defendants knew something, it must allege sufficient facts from which it can reasonably be inferred that this 'something' was knowable and that the defendants were in a position to know it." *Abry Partners V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006). "Stated differently, if a defendant was in a position to know a knowable fact, it is reasonably conceivable that the defendant did know that fact." *Matrix Parent, Inc. v. Audax Mgt. Co., LLC*, 319 A.3d 909, 934 (Del. Super. 2024).

The Directors' argument, again, disregards the Plaintiffs' allegations regarding their involvement in the Valuation Committee. The Directors represent: (1) the only two directors of the Fund GP; and (2) a majority of the Valuation Committee which was tasked with reviewing any investments made by the Defendants for compliance with the risk policies and either authorizing or denying the investment. NYSCEF Doc. No. 2 at ¶ 59–60, 146, 224–25, 232. Plaintiffs allege that the Directors knew the how much was invested in COPL, that the financial reports provided to the Plaintiffs were inaccurate, and that these investments violated the risk policy, but failed to correct these actions. *Id.* at ¶¶ 167, 209, 215, 232, 248. Plaintiffs allege that the Directors took these actions to decrease Plaintiffs' redemptions and to prevent Plaintiffs from terminating the partnership. *Id.* at ¶ 219. Further, the inflated valuation of these investments was used to charge Plaintiffs millions of dollars in unearned fees. *Id.* at ¶¶ 148, 150. Thus, Plaintiffs have sufficiently alleged that the Directors, due to their respective roles: (1) either actively or passively made a misrepresentation of fact; (2) either knew or were in a position to know of the falsity or misrepresentation either with knowledge or reckless indifference to the truth; (3) to induce Plaintiffs to maintain their confidence in the partnership and pay millions of dollars in fees; (4)

which the Plaintiffs justifiably relied on; and (5) which subsequently caused Plaintiffs' damages. Thus, the Directors' argument is unavailing.

The Court has considered the parties' remaining contentions and finds them unavailing.

Accordingly, it is hereby

**ORDERED** that Defendants Taavi Davies and Arthur Dzaghgouni's Motion to Dismiss Counts II, III, IV of the Amended Complaint is DENIED in its entirety; and it is further,

**ORDERED** that Defendants Taavi Davies and Arthur Dzaghgouni shall file their answer to the Amended Complaint within twenty (20) days of the e-file date of this Decision and Order.

The foregoing constitutes the Decision and Order of this Court.

| __June 10, 2025__ | | | |
|---|---|---|---|
| **DATE** | | | **ANAR RATHOD PATEL, A.J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION |
|---|---|---|---|---|
| | | GRANTED | X DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

655662/2024  **BENCHMARK PLUS INSTITUTIONAL PARTNERS, L.L.C. ET AL vs. SACCHETTI, DARIO ET AL**
Motion No.  007

Page 10 of 10

[* 10]